AMOCO PRODUCTION COMPANY,
Plaintiff,

v.

ASPEN GROUP, Floyd R. Hester, Carol B. Hester, and United States of
America, Defendants.

Civil Action No. 97–B–2630.

United States District Court,
D. Colorado.

Aug. 16, 1999.

John Robert Riley, Montgomery, Little and McGrew, P.C., Englewood, CO, for plaintiff.

Arthur P. Yoon, U.S. Department of Justice, Tax Division, Washington, DC, Mark S. Pestal, Assistant U.S. Attorney, Denver, CO, for defendant USA.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

In this interpleader action involving the proper disposition of oil and gas royalty payments, Defendants Floyd R. Hester and Carol B. Hester (collectively the "Hesters") move to dismiss for failure to state a claim pursuant to Rule 12(b)(6). Defendant United States of America ("the government") moves for default judgment, pursuant to Rule 55(b)(2), against Defendant the Aspen Group and summary judgment, pursuant to Rule 56, against the Hesters. The government also moves for summary judgment as to the Hesters' cross-claim. Finally, the Hesters make a cross-motion for summary judgment against the government. The issues are adequately briefed and oral argument will not materially aid their resolution. For the reasons set forth below, I grant the government's motions for default judgment and summary judgment, and I deny the motion to dismiss and motion for summary judgment filed by the Hesters. Jurisdiction over this action is proper in this

court pursuant to 28 U.S.C. § 1340 by virtue of 26 U.S.C. §§ 6331 and 6332.

## I.

The following facts are relevant to my determination of the motions before me. On June 21, 1971, the Hesters purchased land near Durango, Colorado, including an oil and gas leasehold. The stakeholder, Amoco Production Company ("Amoco"), makes periodic royalty payments to the owner of the leasehold. In 1996, through a series of transactions, the Hesters transferred or assigned their oil and gas leasehold interest to the Aspen Group.

On August 21, 1997, the Internal Revenue Service ("IRS") served Amoco with a notice of levy in the amount of $152,581.62, for unpaid taxes allegedly owed for the 1979, 1981, 1983, and 1984 tax years. The notice of levy lists the delinquent taxpayers as "Floyd R Hester & Carol B Hester, 256 Westview Ter, Arlington, TX." The notice of levy also claims that the Aspen Group is the "nominee, transferee, alter ego, agent, and/or holder of a beneficial interest of the Hesters." (Complaint ¶ 13, quoting Notice of Levy served 8/21/97). On September 23, 1997, the Aspen Group sent Amoco a document entitled "Declaration Regarding Unacceptable IRS Levy" (the "declaration"). Though the declaration is signed by the Hesters as "Trustees" of the Aspen Group, the declaration states that the Aspen Group: (1) is not the alter ego of the Hesters; (2) is not the nominee, transferee, alter ego, agent, and/or holder of a beneficial interest of the Hesters; and (3) has "no knowledge of or nexus with" the Hesters. The IRS served Amoco with a second notice of levy on October 24, 1997. On December 16, 1997, the IRS served Amoco with a final demand for payment warning that Amoco's continued non-compliance would cause the IRS to seek collection of a monetary penalty from Amoco pursuant to the Internal Revenue Code, 26 U.S.C. § 6332.

On December 16, 1997, Amoco filed an Interpleader Complaint with this Court pursuant to Rule 22 to extricate itself from the conflicting claims of the IRS and the Aspen Group. Interpleader is a form of joinder open to one who does not know to which of several claimants it is liable. *See General Atomic Co. v. Duke Power Co.,* 553 F.2d 53, 56 (10th Cir.1977). An interpleader action allows the stakeholder to bring the several claimants into a single action and to require them to litigate among themselves to determine which has the valid claim. *See id.* Here, there are four defendants and thus four potential claimants to the interpled property. On December 17, 1997, I entered an Order permitting Amoco to deposit the royalty payments and any future royalty payments at issue into the registry of the Court. The subject royalty payments have been and continue to be deposited into the Court's registry by Amoco.

The government filed an Answer and Claim in which it responded to the Complaint and made a claim to the interpled funds. The Aspen Group, through the Hesters, filed a similar Answer and Claim which was later stricken by this Court as violative of federal laws and local rules requiring corporations and all artificial entities to be represented by licensed attorneys. *See Amoco Production Co. v. Aspen Group,* 25 F.Supp.2d 1162, 1167 (D.Colo. 1998). Because the Aspen Group filed no new Answer or Claim, on December 15, 1998, the Clerk of Court entered a Notice of Default against them. The Hesters, in their individual capacities, have not claimed an interest in the royalty payments.

## II.

I construe the Hesters' pleadings liberally and as a whole because they appear *pro se.* In *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991), the Tenth Circuit established the legal standards by which a *pro se* pleading is measured:

A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. We believe

that this rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiffs failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. At the same time, we do not believe it is the proper function of the district court to assume the role of advocate for the *pro se* litigant.

*Hall,* 935 F.2d at 1110 (citations omitted).

### III.

Initially I address the Hesters' 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. Normally, for purposes of a defendant's 12(b)(6) motion, I do not considered any evidence outside of the pleadings. *Sutton v. Utah State School for Deaf and Blind,* 173 F.3d 1226, 1236 (10th Cir.1999). In evaluating a 12(b)(6) motion to dismiss,

all well-pleaded factual allegations in the amended complaint are accepted as true and viewed in the light most favorable to the nonmoving party.... "A 12(b)(6) motion should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" ... "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."

*Id.* (internal citations omitted). The Hesters ask me to evaluate the sufficiency of the Complaint in light of my November 3, 1998 Order. Because I conclude that the Hesters mistakenly rely on this Order, I deny their motion to dismiss.

In their motion, the Hesters point to the Complaint's reliance on the IRS' Notice of Levy, sent to Amoco, which lists the name of the delinquent taxpayer as, "The Aspen Group As The Alter Ego of: Floyd R & Carol B Hester." (Complaint, ¶ 13). This Notice also provided that, as to collection of taxes assessed against the Hesters, the levy would attach to all property held by or owing to "the Aspen Trust, as nominee, transferee, alter ego, agent, and/or holder of a beneficial interest of Floyd R Hester and Carol B Hester." (Complaint, ¶ 13). The Hesters next direct my attention to my November 3, 1998 Order in which I summarize the law that corporations, partnerships, and associations may appear in federal court only through licensed attorneys. *See Amoco,* 25 F.Supp.2d at 1166. I conclude that because 28 U.S.C. § 1654 and the local rules of this Court do not permit non-attorneys to represent anyone other than themselves, the Answer filed by the Hesters on behalf of the Aspen Group must be stricken. *See id.* at 1167. I also hold that the Hesters are not entitled to appear *pro se* in defense of their interests as beneficiaries of the Aspen Group because they are trustees who,

by their own admission, do not have "any beneficial interest in The Aspen Group." (Answer of the Hesters ¶ 35). They are not the actual beneficial owners of any right being asserted by The Aspen Group and, therefore, cannot be viewed as parties conducting their "own case personally" within the meaning § 1654.

*Id.* (emphasis added).

In their motion to dismiss, the Hesters argue that my statements in this Order directly refute the statements by the IRS, relied upon in the Complaint, contending that the Aspen Group is the alter-ego of the Hesters. The Hesters conclude that,

Since the original Complaint in Interpleader sought a determination concerning the validity of the Notice of Levy with respect to The Aspen Group, it is apparent by the Court's Memorandum Opinion and Order that the original conflict for which Amoco was seeking relief is resolved, and the royalty payments

should be turned over to The Aspen Group.

(Motion to Dismiss, ¶ 4).

This conclusion is misplaced and mistaken. In my Order I specifically address the Hesters' authority to appear on behalf of the Aspen Group. The Hesters had previously filed a disclaimer of any beneficial interest in the Aspen Group. (Answer of the Hesters, ¶ 35) ("Neither Floyd R. Hester or Carol B. Hester hold or claim any interest in the royalty payments . . . nor do they have any beneficial interest in The Aspen Group."). Therefore, I held that they could not appear *pro se* in defense of their interests as beneficiaries of the Aspen Group. In my Order, I did not address nor adjudicate the rights and claims of the remaining claimants to the interpled property. I simply acknowledged the Hesters' disclaimer of interest and the effect of this disclaimer on their *pro se* status. Thus, I deny the Hesters' 12(b)(6) motion to dismiss.

### IV.

Next I address the government's motion for default judgment against the Aspen Group. The Interpleader Complaint was served on the Aspen Group on December 30, 1997. The Hesters, on behalf of the Aspen Group, attempted to file an Answer and Claim. However, because legal counsel is required in the representation of this artificial entity, I struck this pleading. *See Amoco*, 25 F.Supp.2d at 1166. To date, no entry of appearance, answer, or other responsive pleading has been filed by the Aspen Group.

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend itself, and that fact is made to appear by affidavit or otherwise, a clerk shall enter the party's default. Rule 55(a). The party entitled to a judgment by default shall then apply to the court therefor. Rule 55(b)(2). Pursuant to these rules, the government has made an application for default judgment against the Aspen Group. Notice of De-

fault was entered by the Clerk of Court on December 15, 1998.

█ Rule 55(d) states,

The provisions of this rule apply whether the party entitled to the judgment by default is a plaintiff, a third-party plaintiff, or a party who has pleaded a cross-claim or counterclaim . . . .

Commentators and case law state that, "this list is not exclusive" and the rule should also apply to intervening claimants under Rule 24 and interpleading stakeholders under Rule 22. 10 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2701 (1983). I conclude that Rule 55 can be employed by interpleader claimants/defendants pursuant to Rule 22. It has been held that "[t]he failure of a named interpleader defendant to answer the interpleader complaint and assert a claim to the res can be viewed as forfeiting any claim of entitlement that might have been asserted." *Gulf Coast Galvanizing, Inc. v. Steel Sales Co.*, 826 F.Supp. 197, 203 (S.D.Miss. 1993) (internal citations omitted); *see also Nationwide Mut. Fire Ins. Co. v. Eason*, 736 F.2d 130, 133 n. 4 (4th Cir.1984) ("if all but one named interpleader defendant defaulted, the remaining defendant would be entitled to the fund."); *New York Life Ins. Co. v. Connecticut Development Authority*, 700 F.2d 91, 95 n. 6 (2d Cir.1983) (default of interpleader defendants expedited conclusion of interpleader action by obviating need for judicial determination of answering defendant's entitlement to stake); *General Accident Group v. Gagliardi*, 593 F.Supp. 1080, 1089 (D.Conn.1984).

█ The government timely filed an Answer and Claim in which it responded to the Complaint and made a claim to the interpled funds, claiming an interest to the property based on the Hesters' outstanding federal tax liabilities. Because the Aspen Group failed to respond to the Complaint and make a timely claim, a Notice of Default was entered against the Aspen Group at the government's request. Since this time, the Aspen Group has filed nothing to prevent default judgment from en-

tering. Indeed, the Hesters acknowledge the real threat of default judgment against the Aspen Group: "The Aspen Group, which currently has no financial resources with which to secure legal representation, will be subjected to a default judgment, denied its rightful property, and suffer manifest injustice, if this action is continued." (Hester's Motion to Dismiss, ¶ 5). Because the Aspen Group has failed to plead or otherwise defend this action, I enter judgment by default in favor of the government on its claims against the Aspen Group.

## V.

The government also filed a motion for summary judgment against the Hesters. The purpose of a summary judgment motion is to assess whether trial is necessary. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995). Rule 56(c) provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The non-moving party has the burden of showing that issues of undetermined material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, that it believes demonstrate the absence of genuine issues for trial. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. Rule 56(e); *see also Otteson v. United States*, 622 F.2d 516, 519 (10th Cir.1980). These facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Mares*, 971 F.2d at 494. Unsupported allegations without "any significant probative evidence tending to support the complaint" are insufficient, *see White* at 360 (citations omitted), as are conclusory assertions that factual disputes exist. *See Anderson*, 477 U.S. at 247–248, 106 S.Ct. 2505.

In its Answer and Claim, the government claims an interest in the interpled property based on the Hesters' outstanding federal tax liabilities. The outstanding liabilities are evidenced by the Declaration of IRS Revenue Officer Eldridge and the Form 4340 submitted by the government. (Exhibits to Governments' Motion for Summary Judgment). The Hesters have failed to fully pay the taxes and additions assessed and there remains due and owing to the government a sum of $152,581.62, plus statutory additions from September 20, 1997. (Eldridge Declaration and Notice of Levy). Pursuant to 26 U.S.C. § 6321, the government has a lien upon all property and rights to property, whether real or personal, belonging to the Hesters in the amount of the unpaid federal income

tax liabilities. (Eldridge Declaration, ¶ 6). Notices of the Federal Tax Liens have been filed. (Eldridge Declaration, ¶ 7, and Notice of Federal Tax Lien).

The Hesters do not dispute that they have failed to pay their taxes. Indeed, they contend "that their status is that of 'Non–Taxpayers.'" (Hesters' Reply in Support of Motion to Dismiss, p. 2). The Hesters also concede that "Notices of Levy were sent to Amoco, and a Notice of a Federal Tax Lien was recorded, but not filed, with the Clerk and Recorder of La Plata County, July 15, 1998." (Hesters' Response to Government's Motion for Default, p. 5). What the Hesters dispute are the procedures used and followed by the government in filing the lien and assessing the taxes. These issues are more relevant to the Hesters' cross-claim against the government and will be addressed below. The Hesters, in their Answer and Claim, state that they have "no claim to the royalty payments." (Answer, ¶ 28). They further state that, "[n]either Floyd R. Hester or Carol B. Hester hold or claim any interest in the royalty payments from Amoco Production Company, nor do they have any beneficial interest in The Aspen Group." (Answer and Claim, ¶ 35).

Accordingly, the government moves for summary judgment against the Hesters. The Hesters previously moved this court, pursuant to Rule 12(b)(6), for dismissal based on the contention that they had not asserted any type of pecuniary interest in royalty payments deriving from the leasehold. Thus, the Hesters disclaimed any interest in the funds deposited into the registry of this Court by Amoco. In response to this motion, I held that normally when a defendant in an interpleader action files such a disclaimer, that defendant has no further interest or legal standing in the action. (Order of March 30, 1999, p. 4). However, I found that the Interpleader Complaint filed by Amoco alleged that the Hesters have some relationship with the Aspen Group. I found that the nature of the Hesters' relationship with the Aspen Group must be resolved before a determination of the rights to the royalty pay-

ments. I further held that the Hesters were indispensable parties who must be joined pursuant to Rule 19 because of their disputed relationship with the Aspen Group.

I now conclude that summary judgment should be granted against the Hesters and in favor of the government. Because I have entered default judgment against the Aspen Group, the Hesters are no longer indispensable parties under Rule 19 as their relationship with the Aspen Group is no longer material. Therefore, the Hesters' failure to claim an interest in the interpled funds is ultimately fatal to their case. The Hesters have failed to raise material issues of disputed facts relevant to the disposition of the interpled property. Therefore, I grant summary judgment in favor of the government and deny the Hesters' cross-motion for summary judgment.

## VI.

██ The government and the Hesters also file cross-motions for summary judgment regarding the surviving cross-claim brought by the Hesters against the government. Rule 13(g) states that a cross-claim may be asserted against a co-party when it arises out of "the transaction or occurrence that is the subject matter either of the original action or of a counter-claim therein or relating to any property that is the subject matter of the original action." In spite of my ruling on summary judgment, the cross-claim survives because the Hesters were parties to this action when it was filed. *See, e.g., Glaziers and Glassworkers Union Local 252 Annuity Fund v. Newbridge Securities, Inc.,* 823 F.Supp. 1188, 1190 (E.D.Pa.1993).

I analyze the Hesters' cross-claim in light of my continuing duty to them as *pro se* litigants. The pleadings of *pro se* litigants must be construed liberally, and this means that "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so ..." *Hall,* 935 F.2d at 1110. Despite

this liberal construction, I grant summary judgment for the government on the Hesters' cross-claim for the reasons set forth below.

In my November 3, 1998 Order, I found that the only valid cross-claim asserted against the government by the Hesters was an allegation that the government failed to provide adequate notice of levy in violation of deficiency collection procedures pursuant to 26 U.S.C. § 7433. *See Amoco*, 25 F.Supp.2d at 1166 ("To the extent the Hesters alleging [sic] unauthorized collection of a federal tax in violation of § 7433, that claim remains viable at this juncture."). In their pleadings surrounding the cross-motions for summary judgment, the Hesters raise many potential cross-claim issues that they argue involve the "unauthorized collection of a federal tax." Out of an abundance of caution, I address the claims raised by the Hesters.

26 U.S.C. § 7433 is the exclusive remedy for claimants to recover · damages against the government for unauthorized collection of taxes. It states, in relevant part:

Civil damages for certain unauthorized collection actions

(a) In general.—If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States. Except as provided in section 7432, such civil action shall be the exclusive remedy for recovering damages resulting from such actions.

(b) Damages.—In any action brought under subsection (a) or petition filed under subsection (e), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the lesser of $1,000,000 ($100,000, in the case of negligence) or the sum of—

(1) actual, direct economic damages sustained by the plaintiff as a proximate result of the reckless or intentional or negligent actions of the officer or employee, and

(2) the costs of the action.

. . .

(d) Limitations.—

. . .

(3) Period for bringing action.—Notwithstanding any other provision of law, an action to enforce liability created under this section may be brought without regard to the amount in controversy and may be brought only within 2 years after the date the right of action accrues.

■ The Hesters make many complaints that are inappropriate for my resolution of this action. As I held in my earlier Order in this case, § 7433 constitutes a waiver of sovereign immunity by the government. *See Amoco*, 25 F.Supp.2d at 1166. The Supreme Court has ruled that in every case involving the government's sovereign immunity, the statute in question must be strictly construed in favor of the sovereign and may not be enlarged beyond the waiver its language expressly requires. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–35, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). Thus, I have whittled down the Hesters' contentions to those I find are appropriate under § 7443's statutory waiver.

■ Rule 13(g) governs cross-claims against co-parties and mandates, in relevant part:

A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action.

In their pleadings, the Hesters raise many issues outside the scope of the subject

matter of the original interpleader action and also raise issues relating to property that was not the subject matter of the original action. The interpleader action was initiated by Amoco to determine the correct recipient of oil and gas royalty payments. In their cross-claim pleadings, the Hesters raise questions surrounding other funds and properties levied by the IRS, such as Mr. Hesters' compensation while employed at Federal Express and an account at Prudential Insurance Company. I conclude that only the allegations regarding the improper "collection of Federal tax" with respect to the Amoco royalty payments are properly addressed in the resolution of this cross-claim. All other allegations are outside of the subject matter of the original action and involve property not at issue in that action.

■ Regarding Amoco payments, questions of standing are raised. The government has not addressed this issue, but because standing is jurisdictional, it can be raised by the court at any time. *See United States v. Hays,* 515 U.S. 737, 742, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995) ("[W]e are required to address the issue [of standing] ... even if the parties fail to raise the issue before us.") (internal citations omitted); *Oklahoma Hosp. Ass'n v. Oklahoma Pub. Co.,* 748 F.2d 1421, 1423 (10th Cir. 1984) ("standing is a threshold requirement which empowers a federal court to adjudicate a dispute.") (internal citations omitted).

Cases that have addressed standing under 26 U.S.C. § 7433 have held that claimants must be direct taxpayers and not third parties. *See Reeder v. United States,* 1999 WL 417441 (9th Cir. June 17, 1999) (unpublished disposition) (only direct taxpayers can bring claims under § 7433); *Haas v. Schalow,* 1998 WL 904727 (7th Cir. Dec.23, 1998) (unpublished disposition) (plaintiff had no standing to bring § 7433 claim because "he was not the taxpayer liable for the tax which the defendants were seeking to collect."); *City View Trust v. Hutton,* 1998 WL 1031525 (D.Wyo. Nov.2, 1998) (slip opinion) (§ 7433 only allows actions by direct taxpayers); *South-*

*land Forming, Inc. v. United States,* 1997 WL 842410 (S.D.Fla. Dec.10, 1997) (unpublished disposition) (same). This district has also addressed standing in regard to a § 7433 action:

> "The injury-in-fact element requires that the plaintiff have [sic] suffered an invasion of a legally protected interest which is concrete and particularized [.]" The fact that the plaintiff has suffered damages is inconsequential if he does not have a legally protected interest in the property at issue. A "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim for relief on the legal rights or interests of third parties."

*Gross v. United States,* 1996 WL 469082 (D.Colo.1996) (unpublished disposition) (internal citations omitted). The court went on to address the specific facts and stated, "Plaintiff is asserting that the title of the [partnership] in the subject property should not be encumbered by the lien at issue. Plaintiff is the general partner of the partnership but he has not asserted that he, as an individual, has any legal interest in the property." *Id.* The court finally held that § 7433 provides a remedy for taxpayers, and because the Plaintiffs were not taxpayers within the meaning of the statute they lack standing to contest the actions.

The Hesters have been clear about one thing. They say they are not taxpayers. In fact, they characterize themselves as "non-taxpayers" in all of their pleadings. Furthermore, with respect to the Amoco royalty payments, the Hesters allege that they sold their mineral rights and these rights are owned by the Aspen Group. (Hesters' Reply in Support of Motion to Dismiss, p. 1). The Hesters contend that, as trustees, they hold "legal title only" to the mineral rights leased by Amoco and they "possess no beneficial interest in the Aspen Group." (Hesters' Response to Motion for Default and Summary Judgment, p. 4). They further argue that, "Amoco is under contract to the Aspen Group for the

payment of royalties earned from the mineral rights leased by Amoco and *owned by the Aspen Group*." (Hesters' Response to Motion for Default and Summary Judgment, p. 4).

A "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim for relief on the legal rights or interests of third parties." *Gross*, 1996 WL 469082 (internal citations omitted). The Hesters are resting their § 7433 claim on legal rights and interests that they assert are owned by the Aspen Group. I have already held that an individual who is not an attorney cannot maintain an action on behalf of a legal entity. *See Amoco*, 25 F.Supp.2d at 1166. Therefore, the Hesters do not have standing to bring this action against the government. However, out of an abundance of caution, and because the government has raised issues regarding the Hesters' beneficial interest in the Aspen Group, I continue my analysis.

The Hesters have alleged many constitutional deficiencies in the governments' collection and assessment of taxes. As I made clear in my earlier holding, "the constitutionality of the income tax laws and tax collection procedures have been consistently upheld by the federal courts." *See Amoco*, 25 F.Supp.2d at 1165 (citing *Lonsdale v. United States*, 919 F.2d 1440, 1447–1448 (10th Cir.1990)) (collecting cases and rejecting many of the same arguments asserted by the Hesters). This same ruling applies to the constitutional issues raised by the Hesters in this cross-claim and for that reason I will not address them further. *See, e.g., Buckner v. United States*, 1999 WL 61071, *1 (10th Cir. Feb.4, 1999) ("Section 7433 clearly does not waive sovereign immunity for ... assertions that the federal tax system is unconstitutional.").

The Hesters also raise many issues regarding the substantive assessment of their taxes: "The Hesters believe that there were numerous violations of provisions of the IRC and the CFR in the *assessment* and collection process by the IRS." (Hesters' Response to Motion to for Summary Judgment, p. 9) (emphasis added). Included in their allegations are challenges to the allowance of tax credits, denials of deductions, assessments of deficiencies, calculations of monies owed, and refunds. In my November 3, 1998 Order I held that the Hesters' remaining cross-claim included only complaints made under 26 U.S.C. § 7433. According to the plain language of this provision, it can serve only to attack unlawful collection practices and not the validity or merits of an assessment. Other circuits that have addressed this issue have also held that assessment merits cannot be reached by § 7433. *See Miller v. United States*, 66 F.3d 220, 222 (9th Cir.1995) ("the assessment or tax determination part of the process is not an act of 'collection' and therefore, not actionable under § 7433."); *Shaw v. United States*, 20 F.3d 182, 184 (5th Cir.1994) ("based upon the plain language of the statute [§ 7433], which is clearly supported by the statute's legislative history, a taxpayer cannot seek damages under § 7433 for an improper assessment of taxes."); *Gonsalves v. IRS*, 975 F.2d 13, 16 (1st Cir.1992) (same); *Ihasz v. United States*, 997 F.Supp. 547 (D.Vt.1997) ("Congress recognized a distinction between the collection of tax and the determination of tax, and intentionally limited § 7433 to acts relating to the collection of tax."). I join these circuits in holding that the plain language of § 7433 does not allow a claim contesting the substantive assessment of taxes. Thus, I do not consider these allegations as part of the Hesters cross-claim.

The § 7433 statute of limitations provides: "an action to enforce liability created under this section ... may be brought only within 2 years after the date the right of action accrues." 26 U.S.C. § 7433(d). The applicable regulation provides that a cause of action under this section accrues "when the taxpayer has had a reasonable opportunity to discover all essential elements of a possible cause of action." 26 C.F.R. § 301.7433–1. These

provisions further limit my review of the Hesters' cross-claim. The Hesters point to many alleged infractions that occurred far before this period. For instance, the Hesters argue they were declined the opportunity to obtain an appeal after their 1980, 1981, 1982, 1983, and 1984 exams. The Hesters do not allege that they were ever unaware of the facts surrounding these denials. Because the Hesters filed their cross-claim with this Court on August 17, 1998, I cannot consider any claim where the right of action had accrued by August of 1996.

■ Section 7433 authorizes suits only where an IRS agent has violated the taxing statutes or regulations. Therefore, any "rights" not created by statute or regulation, such as internal IRS policy in publications disseminated to taxpayers or state statutes not incorporated into the federal statute, cannot be relied upon under § 7433. *See, e.g., Gonsalves,* 975 F.2d at 16 ("The government has not consented to suit for violations of rights created in [IRS publications]"). Therefore, I cannot review claims regarding Colorado filing requirements not incorporated into the federal tax laws nor IRS publications regarding appeals.

Having appropriately narrowed the allegations against the government, I conclude that the Hesters' cross-claim under § 7433 fails to survive summary judgment. Under summary judgment standards, I must find in favor of the government if I conclude that no reasonable juror could find for the Hesters. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. Once a properly supported summary judgment motion is made, the opposing party cannot simply rest on the allegations made in the pleadings but must respond with specific facts showing the existence of a genuine issue of material fact. Rule 56(e); *see also Otteson,* 622 F.2d at 519.

In its motion for summary judgment, the government alleges and verifies by documentation that on November 21, 1996, the IRS sent by certified mail to the Hesters' last known address a "Final Notice—Notice of Intent to Levy" in accordance with the requirements of notice before levy. (Eldridge Declaration, ¶ 8; Notice of Intent to Levy); 26 U.S.C. § 6331. The Notice was sent no less than 30 days before the levy was made upon the Amoco property. (Notice of Levy, February 25, 1997). On November 26, 1996, the IRS received a postal receipt regarding the notice which was signed by Mr. Hester. There is no evidence that the IRS recklessly or intentionally disregarded any provision with respect to the collection of taxes. 26 U.S.C. § 7433.

■ In response, the Hesters allege that, "[t]his reckless and/or intentional disregard of the provisions of Title 26 U.S.C., and the regulations promulgated under this title, by officer(s) and/or employee(s) of the IRS, has resulted in undeterminable damages to the Aspen Group and/or its beneficiary." However, the Hesters fail to support these bare allegations with evidence. They summarily contend, among other things, that no Notice of Seizure was issued to Amoco, liens were invalidly made, and no Release of Levy was issued to Amoco. However, even assuming against the weight of the evidence that these allegations are true, the Hesters do not show they were harmed by these technical, procedural failures. Section 7433 allows a claim for damages against the government for unauthorized collections. However, in order to prove damages, the statute requires "actual, direct economic damages sustained by the plaintiff as a proximate result of the reckless or intentional or negligent actions of the officer or employee." 26 U.S.C. § 7433. The regulations state that "actual, direct economic damages" are "actual pecuniary damages sustained by the taxpayer as the proximate result of the reckless or intentional actions of an officer or an employee of the Internal Revenue Service. Injuries such as inconvenience, emotional distress and loss of reputation are compensable only to the extent that they result in actual pecuniary damages." 26 C.F.R. § 301.7433–1.

The Hesters describe their damages as follows:

> The deprivation to the Hesters, caused by the unauthorized collection of a federal tax in violation of § 7433, ultimately resulted in Mr. Hester's inability to fulfill his employment contract obligations, thus causing the loss of his income, the loss of his employment, the loss of the property of his career, the loss of all future income from that career, the loss of retirement benefits, the loss of future retirement income, the loss of status, the loss of standing, the loss of health, the loss of his life insurance, and the loss of his insurability.

(Hesters' Motion for Summary Judgment, p. 19). However, the Hesters fail to submit any supporting documentation of the specific losses they have suffered or, more importantly at this juncture, whether the damages were the "proximate result of the reckless or intentional actions of an officer or an employee" as required by the statute and regulation. The Hesters cannot rely on the bare allegations in their pleadings. *See Otteson*, 622 F.2d at 519. For this reason, as well as the reasons enumerated above, I conclude that no reasonable juror could find in favor of the Hesters. Therefore, I grant the government's motion for summary judgment on the Hesters' cross-claim and accordingly deny the Hesters' cross-motion for summary judgment.

Accordingly, I ORDER that:

(1) The Hesters' motion to dismiss pursuant to Rule 12(b)(6) is DENIED;

(2) The government's motion for default judgment against the Aspen Group is GRANTED;

(3) The government's motion for summary judgment against the Hesters is GRANTED;

(4) The government's motion for summary judgment against the Hesters' cross-claim is GRANTED;

(5) The Hesters' motions for summary judgment against the government are DENIED; and

(6) The Hesters' motion to extend is DENIED AS MOOT.

(7) Judgment shall enter in accordance herewith awarding the interpleaded funds in the registry of the Court of $7,516.17 plus interest less registry fee assessment, to the United States of America.