UNITED STATES of America,
Plaintiff,

v.

John W. MARSH, Sean Marsh & Heather Marsh as Trustees of the Marsh Trust, and Bank of Hawaii, Defendants.

Civil No. 99–00355 SOM.

United States District Court,
D. Hawaii.

March 2, 2000.

Bernard J. Knight, Jr., U.S. Department of Justice, Washington DC, for plaintiff.

Stephen P. Pingree, Richard P. McClellan, III, Honolulu, HI, for defendant.

## ORDER GRANTING SUMMARY JUDGMENT ON THE COUNTERCLAIM

MOLLWAY, District Judge.

Plaintiff United States of America ("United States") has filed this action to collect unpaid federal employment and unemployment taxes owed by Defendant John W. Marsh ("Marsh"). Marsh has filed a Counterclaim against the United States for unauthorized collection practices pursuant to 26 U.S.C. § 7433.

The United States has moved for summary judgment on the Counterclaim. Because all of the allegations contained in the Counterclaim are either time-barred or not cognizable, the court grants the United States' motion.

### BACKGROUND

Between 1985 and 1989, Marsh operated a sole proprietorship called S & H Masonry. During that time, Marsh paid wages to various S & H Masonry employees but failed to pay federal employment and unemployment taxes. Marsh admits that the assessments against him for the unpaid taxes are correct. See Stipulation Regarding Amount of Assessments at Issue and to Continue Hearing on United States' Motion to Dismiss Counterclaim of John W. Marsh; Order filed on December 3, 1999.

To collect the unpaid taxes Marsh owed, the Internal Revenue Service ("IRS") served a Notice of Levy dated November 18, 1996, ("November 18, 1996 levy") on the Employees' Retirement System of the

State of Hawaii ("Retirement System"). See Declaration of Rebecca McKenzie–Young ("McKenzie–Young Dec.") ¶ 3, attached to Plaintiff's Motion to Dismiss; Exhibit 1, attached to Plaintiff's Motion to Dismiss. Marsh, a retired police officer, was receiving retirement payments [1] from the Retirement System. The November 18, 1996 levy was on Form 668–A(c) and indicated that Marsh owed the IRS $510,-219.96.

On December 2, 1996, Marsh's counsel wrote a letter to Revenue Officer Rebecca McKenzie–Young asking that the November 18, 1996 levy on the Retirement System be released because the IRS "is only entitled to any amounts pursuant to levy on a pension plan where the taxpayer has an unconditional right to demand payment from the plan." See Exhibit 4, attached to Plaintiff's Motion to Dismiss. Marsh's counsel argued that, because Marsh was only entitled to receive payments in the future, the retirement payments could not be levied. Id. Marsh's counsel further asked the IRS to honor his power of attorney and communicate only through him. Id.

On December 9, 1996, the IRS responded to Marsh's counsel's December 2, 1996 letter, explaining that the IRS had not realized that the power of attorney was relevant because the power of attorney form executed by Marsh's counsel had not included Marsh's employer identification number. See Exhibit B, attached to Defendants' Opposition to Plaintiff's Motion to Dismiss. The IRS said that it would research Marsh's "right to demand payment from his pension plan." Id.

At some point, Marsh's counsel also complained to the IRS that the November 18, 1996 levy was invalid because it was not properly signed by a manager. See Exhibit H, attached to Defendants' Opposition to Plaintiff's Motion to Dismiss.

---

**1.** Marsh says that he elected to receive his accumulated contributions in a lump sum when he retired. In addition to the lump sum payment, Marsh was to receive a retirement allowance equal to the maximum retirement allowance reduced by the actuarial equivalent of the contributions. These payments will cease at Marsh's death. See Haw.Rev.Stat. § 88–83.

The IRS served its Final Demand for payment on the Retirement System on January 6, 1997. *See* McKenzie–Young Dec. ¶ 4; Exhibit 2, attached to Plaintiff's Motion to Dismiss. On January 15, 1997, the Retirement System honored the November 18, 1996 levy and remitted $1,188.83 to the IRS. *See* McKenzie–Young Dec. ¶ 5; Exhibit 3, attached to Plaintiff's Motion to Dismiss.

The IRS served another Notice of Levy dated January 17, 1997 on the Retirement System ("January 17, 1997 levy"). The January 17, 1997 levy was also on Form 668–A(c) but stated a different amount—$496,309.31—owed by Marsh. This levy was signed by an IRS manager. *See* Exhibit D, attached to Defendants' Opposition to Plaintiff's Motion to Dismiss.

The IRS also served a Notice of Levy dated September 19, 1997 ("September 19, 1997 levy"). This levy, however, was on Form 668–W(c).[2] *See* Exhibit G, attached to Defendants' Opposition to Plaintiff's Motion to Dismiss.

Between January 15, 1997 and October 15, 1997, the IRS levied $22,572 of Marsh's retirement payments, which was all but $19 of the amount Marsh was entitled to receive. *See* Exhibit H at 4, attached to Defendants' Opposition to Plaintiff's Motion to Dismiss.

"Without notice or explanation, on October 31, 1997, the IRS reduced the levied amount to $963." *Id.* The balance of $299.58 was remitted to Marsh.

On May 17, 1999, the United States filed this action. It amended the Complaint on May 24, 1999. The United States seeks to reduce to judgment unpaid federal employment and unemployment taxes assessed against Marsh and to set aside allegedly fraudulent transfers of two parcels of real property from Marsh to the Marsh Trust.

On July 22, 1999, Marsh filed a Counterclaim against the United States for damages for unauthorized collection practices under 26 U.S.C. § 7433. Marsh claims that the IRS acted improperly in attempting to collect the taxes it claims Marsh owes. Marsh seeks the return of all monies levied, $1,000,000 in damages, and attorney's fees and costs.

■ The United States has moved to dismiss the Counterclaim on statute of limitations grounds under Fed.R.Civ.P. 12(b)(1), which concerns lack of subject matter jurisdiction.[3] The United States relies on the wrong court rule. "[F]ederal statutory time limitations on suits against the government are not jurisdictional in nature." *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), *reh'g denied,* 498 U.S. 1075, 111 S.Ct. 805, 112 L.Ed.2d 865 (1991). *See also Capital Tracing, Inc. v. U.S.,* 63 F.3d 859, 861 n. 3 (9th Cir.1995). Accordingly, the United States' motion is one under Rule 12(b)(6), not under Rule 12(b)(1). Because the United States, however, has submitted evidence beyond the pleadings, the court treats this motion as one for summary judgment. *See Keams v. Tempe Tech. Inst., Inc.,* 110 F.3d 44, 46 (9th Cir.1997) (if matters outside the pleadings are considered, a motion to dismiss under Rule 12(b)(6) is treated as one for summary judgment); *Anderson v. Angelone,* 86 F.3d 932, 934 (9th Cir.1996).[4]

---

2. The court asked the parties to clarify the total amount due on the September 19, 1997 levy because the court's copy of the levy was illegible. Neither party was able to state the total amount due on that levy, but this fact is not essential for purposes of ruling on this motion.

3. Marsh has also moved to dismiss some of the allegations in the Counterclaim for failure to state a claim upon which relief can be granted.

4. Local Rule 56.1 of the United States District Court for the District of Hawai'i requires that motions for summary judgment be accompanied by a "separate concise statement detailing each material fact as to which the moving party contends ... [t]hat there are no genuine issues to be tried ... [and][w]hich are essential for the court's determination of the issue or issues presented on summary judgment." Marsh objected to the United States' failure to file a concise statement of material facts. In fairness to both parties, the court continued the hearing on the United States' motion and

## STANDARD

Summary judgment shall be granted when

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(c). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Summary judgment must be granted against a party who fails to demonstrate facts to establish what will be an essential element at trial. *Id.* at 322, 106 S.Ct. 2548. The burden initially lies with the moving party to identify for the court "the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted). The non-moving party may not rely on the mere allegations in the pleadings and instead must set forth "specific facts showing that there is a genuine issue for trial." *Id.* At least some " 'significant probative evidence tending to support the complaint' " must be produced. *Summers v. A. Teichert & Son, Inc.,* 127 F.3d 1150, 1152 (9th Cir. 1997) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would

set a timetable for supplemental briefing that

otherwise be necessary to show that there is a genuine issue for trial." *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987) (citing *Matsushita Elec. Indus. Co., Ltd.,* 475 U.S. at 587, 106 S.Ct. 1348), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

However, when "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec. Serv.,* 809 F.2d at 631. All evidence and inferences must be construed in the light most favorable to the nonmoving party. *Id.* Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. *Id.*

## DISCUSSION

I. *The Statute of Limitations Bars Two Claims In The Counterclaim.*

■ In his Counterclaim, Marsh has sued the United States for monetary damages arising from the IRS's collection of taxes it claims Marsh owes. The United States, however, "is immune from suit save as it consents to be sued." *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)), *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980). The party bringing suit against the United States bears the burden of proving that sovereign immunity has been waived. *See Cato v. United States,* 70 F.3d 1103, 1107 (9th Cir.1995); *Holloman v. Watt,* 708 F.2d 1399, 1401 (9th Cir.1983), *cert. denied,* 466 U.S. 958, 104 S.Ct. 2168, 80 L.Ed.2d 552 (1984).

The United States has consented to be sued for damages when an IRS employee intentionally or recklessly disregards any

would comply with Local Rule 56.1.

provision of the Internal Revenue Code, or any regulation promulgated under the Internal Revenue Code in connection with the collection of federal tax. *See* 26 U.S.C. § 7433 (1997).[5]

"[W]hen consent to sue the United States is granted, such as by way of § 7433, the precise terms, conditions, and qualifications of such consent must be scrupulously followed." *Caparaso v. Commissioner of Internal Revenue,* 907 F.Supp. 1235, 1239 (N.D.Ind.1995) (citing *Long Island Radio Company v. NLRB,* 841 F.2d 474, 477 (2d Cir.1988)).

An action to enforce liability under section 7433 "may be brought only within two years after the date the right of action accrues." 26 U.S.C. § 7433(d)(3) (1997). A cause of action accrues "when the taxpayer has had a reasonable opportunity to discover all essential elements of a possible cause of action." 26 C.F.R. § 301.7433–1(g)(2).

Marsh claims that section 7433 was violated because: (1) the November 18, 1996 levy "was not properly countersigned"; (2) a Notice of Levy was not served for each semi-monthly retirement payment; and (3) the September 19, 1997 exempt amount was incorrect.[6] The first two of these claims are time-barred. Marsh filed his Counterclaim on July 22, 1999. Thus, the section 7433 claim based on any of these allegations must have accrued on or before July 22, 1997.

A. *Marsh's Allegation That The First Levy Was Not Properly Signed Is Time–Barred.*

■ Marsh alleges that the November 18, 1996 levy "was not properly countersigned by the IRS District Authorized Person." Counterclaim ¶ 7. According to Marsh's attorney, on December 2, 1996, he wrote to McKenzie–Young to request that she release the levy. Marsh's attorney says that Group Manager Rebecca Nadler responded to his concerns, "agree[ing] that the 11/8/96 levy was not properly issued as it was not signed as required." *See* Exhibit H at 3, attached to Defendants' Opposition to United States' Motion to Dismiss.

---

5. Section 7433 provides:
   If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States. Except as provided in section 7432, such civil action shall be the exclusive remedy for recovering damages resulting from such actions.
   Section 7433 was subsequently amended to impose liability for negligent conduct by an IRS employee. *See* 26 U.S.C. § 7433 (1999). The amendment, however, only applies to actions taken after July 22, 1998.

6. Marsh also alleges in his Counterclaim that IRS employee Rebecca McKenzie–Young disregarded a power of attorney and "yelled at Defendant Sean Marsh." At the hearing on this motion, Marsh's counsel stated that these allegations were not the basis for Marsh's section 7433 action. Instead, Marsh claims that these allegations are evidence of the IRS's alleged animus against Marsh.
   Even if those allegations were the basis for a section 7433 claim, they would be time-barred. Marsh knew by December 2, 1996, that McKenzie–Young had allegedly "disregarded the power of attorney." *See* Exhibit 4, attached to Plaintiff's Motion to Dismiss ("Therefore, to follow up on my complaint about my [power of attorney] being circumvented, I am sending a copy of this letter to the PRO"); Exhibit B, attached to Defendants' Opposition to United States' Motion to Dismiss. By November 8, 1996, Marsh also knew that McKenzie–Young had allegedly "yelled at [him] ... in a threatening, insulting and hostile manner" on November 8, 1996. *See* Exhibit J, attached to Defendants' Separate and Concise Statement of Facts; Exhibit H, attached to Defendants' Opposition to United States' Motion to Dismiss (Marsh's attorney states, "On November 8, 1996, I received a telephone call from [ ] Mr. Marsh telling me that RO McKenzie–Young had come to his home looking for him and harassed his son .... Apparently, she stood in a neighbor's driveway and yelled like 'a fishwife' at the son in a confrontational manner demanding that he answer her questions"). Having occurred before July 22, 1997, both of these allegations would have also been time-barred.

"The IRS subsequently acknowledged that the [l]evy was erroneous and a mistake and reissued a signed [l]evy in February 1997." Counterclaim ¶ 7. Because Marsh knew of any section 7433 claim based on this allegation as early as December 2, 1996, the claim is time-barred.[7]

B. *Marsh's Allegation That a Notice of Levy Should Have Been Filed For Each Semi–Monthly Payment Is Time–Barred.*

Marsh claims that section 7433 was violated because the IRS failed to file a separate Notice of Levy for each semi-monthly retirement payment made to Marsh by the Retirement System. According to Marsh, the November 18, 1996 and January 17, 1997 levies were "snapshot" levies that entitled the IRS to only the particular semi-monthly payments owed to Marsh at the times of the two levies. The Retirement System made multiple remittances to the IRS under these levies.

This court need not decide whether the IRS should have filed a separate "snapshot" levy addressing each semi-monthly payment. Even if the court were to assume the correctness of Marsh's argument, his section 7433 claim would still be time-barred. The Retirement System made its first payment to the IRS on January 15, 1997. Thereafter, the Retirement System remitted $1188 to the IRS twice a month. At the same time, the Retirement System sent Marsh the remaining one dollar that had not been levied by the IRS. From this repeated semi-monthly payment of only one dollar directly to him, Marsh knew well before July 1997 that the Retirement System was continually remitting $1188 semi-monthly to the IRS. Accordingly, Marsh's allegation that the IRS should have filed a Notice of Levy for each semi-monthly retirement payment is time-barred.

C. *The Limitations Period Was Not Tolled While Marsh Was Pursuing Nonmandatory Administrative Remedies.*

■ Marsh claims that summary judgment should not be granted on the Counterclaim because the limitations period was tolled while he was pursuing his administrative remedies.

A plaintiff is not required to exhaust administrative remedies before filing a section 7433 action. *See* 26 U.S.C. § 7433(d)(1) (1997). Instead, "[t]he amount of damages awarded ... may be reduced if the court determines that the plaintiff has not exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service." *Id.*

When a complainant is not required to exhaust his administrative remedies before bringing suit, the Supreme Court has held that the statute of limitations is not tolled, even if the complainant chooses to seek optional administrative remedies. *See Delaware State College v. Ricks*, 449 U.S. 250, 261, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (holding a 42 U.S.C. § 1981 claim untimely as "the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods"); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 460–61, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) (refusing to toll § 1981 statute of limitations even though a Title

---

7. Marsh's allegation that section 7433 was violated by the IRS's failure to properly sign the November 18, 1996 levy also fails to state a claim upon which relief may be granted. "Section 7433 authorizes suits only where an IRS agent has violated the taxing statutes or regulations. Therefore, any 'rights' not created by statute or regulation, such as internal IRS policy in publications disseminated to taxpayers or state statutes not incorporated into the federal statute, cannot be relied upon under § 7433." *Amoco Prod. Co. v. Aspen*

*Group*, 59 F.Supp.2d 1112, 1122 (D.Colo. 1999). *See, e.g., Gonsalves*, 975 F.2d at 16 ("The government has not consented to suit for violations of rights created in [IRS publications]"). The countersignature requirement is set forth in an IRS manual, not in the Code or any regulations promulgated pursuant to the Code. Accordingly, the countersignature allegation does not state a section 7433 claim and that is an additional ground for dismissal of that allegation.

VII complaint was pending in the administrative agency); *see also Andrews v. Consolidated Rail Corp.*, 831 F.2d 678, 684 (7th Cir.1987) (pursuit of nonmandatory administrative remedy under Rehabilitation Act did not toll the statute of limitations); *Smith v. McClammy*, 740 F.2d 925, 927 (11th Cir.) ("[s]ince exhaustion of administrative remedies is not a prerequisite to filing suit, the statute would not be tolled pending pursuit of administrative remedies but would begin to run on the date the cause of action accrued"), *reh'g denied*, 748 F.2d 690 (11th Cir.1984).

Thus, the statute of limitations applicable to a section 7433 action is not tolled pending exhaustion of administrative remedies, but runs from the time the cause of action accrued. Marsh chose to pursue administrative remedies rather than immediately sue in federal court. Although administrative remedies were an option, they were not a prerequisite to filing suit. Because Marsh could have sued immediately rather than awaiting the result from the administrative agency, Marsh's section 7433 claim was not tolled.[8]

D. *The Limitations Period Was Not Equitably Tolled.*

■ Nor is the statute of limitations on his section 7433 claim equitably tolled.

The doctrine of equitable tolling of a statute of limitations may be applied in suits against the federal government. *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95–96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). However, "tolling is an extraordinary remedy which should be extended only sparingly." *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir.1993) (citing *Irwin*, 498 U.S. at 96, 111 S.Ct. 453).

■ Courts should toll a statute of limitations only when there is an inequitable event that prevents timely action. *Id.* The Supreme Court has recognized equitable tolling only "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin*, 498 U.S. at 96, 111 S.Ct. 453 (footnotes omitted).[9]

Neither of these two circumstances applies here. Marsh did not file a defective pleading during the statutory period, and there is no evidence that Marsh was induced or tricked by the United States into allowing the filing deadline to pass.

Marsh argues that equitable tolling is warranted because the IRS initially told Marsh that the first and second levies

---

**8.** Even if exhaustion was mandatory, Marsh's claims would still have been time-barred. Marsh attempted to exhaust his administrative remedies by writing a letter to the Taxpayer Advocate on February 17, 1999. *See* Exhibit H, attached to Defendants' Opposition to Plaintiff's Motion to Dismiss (Marsh's attorney states, "This letter is Mr. Marsh's good faith attempt to exhaust all administrative remedies before filing suit in District Court"). As discussed above, Marsh's claims accrued on or before July 22, 1997. Marsh's attempt to exhaust his administrative remedies in February 1999, almost two years after the claims accrued, is not a sufficient basis to save Marsh's claims.

**9.** The United States argues that equitable tolling does not apply to this action after *United States v. Brockamp*, 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997). The court disagrees. *Brockamp* addressed a particular tax provision. There is no indication that the

Supreme Court meant *Brockamp* to apply to all tax claims. The Court in *Brockamp* held that Congress did not intend the equitable tolling doctrine to apply to the statute of limitations for filing tax refund claims. *Id.* at 354, 117 S.Ct. 849. The Court noted that, "[o]rdinarily limitations statutes use fairly simple language, which one can often plausibly read as containing an implied 'equitable tolling' exception." *Id.* at 350, 117 S.Ct. 849. In contrast, "[s]ection 6511 sets forth its time limitations in a highly detailed technical manner, reiterates them several times in different ways, imposes substantive limitations, and sets forth explicit exceptions to its basic time limits that do not include 'equitable tolling.'" *Id.* at 350–51, 117 S.Ct. 849. The statute of limitations at issue here for section 7433 claims is more akin to the ordinary limitations statute that merely sets forth when a cause of action will have run. Accordingly, *Brockamp* does not prohibit equitable tolling here.

**1178**

were proper but turned around and served the third levy, which included an exempted amount. According to Marsh, McKenzie–Young told Marsh's attorney in February 1997 that the continuous levy form (668–W) would be issued. Two weeks later, IRS District Counsel Henry O'Neill told Marsh's counsel that the first two levies were proper. Seven months later, the IRS issued the Form 668–W (third levy). *See* Defendants' Supplemental Memo. at 105.

Marsh does not indicate how this conduct misled him. Marsh instead appears to argue that this conduct was general evidence of the IRS's misconduct. Without evidence that Marsh was induced or tricked by the United States into allowing the filing deadline to pass, there is no basis for equitable tolling.

The court has found time-barred two of Marsh's allegations, that is, the allegation that the November 18, 1996 levy "was not properly countersigned" and the allegation that a Notice of Levy should have been served for each semi-monthly retirement payment. There is no equitable basis for tolling the limitation period on either of those allegations.

There is no evidence that the IRS induced or tricked Marsh into allowing the filing deadline to pass on the claim that the November 18, 1996 levy was not countersigned. In fact, the IRS addressed this allegation two months later by serving a properly countersigned levy on January 17, 1997.

There is also no evidence that the IRS induced or tricked Marsh into allowing the filing deadline to pass on the claim that a Notice of Levy should have been served for each semi-monthly payment. The IRS delay in serving the September 9, 1997 levy was irrelevant to Marsh's claim that a Notice of Levy should have been filed for every semi-monthly payment, as the delay was in serving a continuous levy, not in serving a one-time levy. Taking all of the allegations as true and in the light most favorable to Marsh, no possible construction of the facts exists that would support equitable tolling.

II. *Summary Judgment is Granted on Marsh's Allegation That The Exempt Amount Was Incorrect.*

■ Marsh's third section 7433 claim is that, even if the IRS acted correctly in issuing what it deemed to be a "continuous levy," the IRS was only allowed to levy 15 percent of each semi-monthly payment under 26 U.S.C. § 6331(h). The court disagrees.

Section 6331(h) was enacted in 1997 and only applies to levies issued after August 5, 1997. Taxpayer Relief Act of 1997, Pub.L. No. 105–34, § 1024(b), 111 Stat. 788, 923–24 (1997). Thus, the only levy to which Marsh's 15 percent argument applies is the third levy, issued on September 19, 1997.

The effect of section 6331(h) was to subject to continuous levy funds that previously, under section 6334, had been exempt from levy. Section 6331(h) states:

The effect of a levy on specified payments to or received by a taxpayer shall be continuous from the date such levy is first made until such levy is released. Notwithstanding section 6334, such continuous levy shall attach to up to 15 percent of any specified payment due to the taxpayer.

26 U.S.C. § 6331(h)(1) (1998).

A "specified payment" is (1) "any Federal payment other than a payment for which eligibility is based on the income or assets (or both) of a payee," (2) "any payment described in paragraph (4), (7), (9), or (11) of section 6334(a)," and (3) "any annuity or pension payment under the Railroad Retirement Act or benefit under the Railroad Unemployment Insurance Act." *Id.* § 6331(h)(2). Payments described in section 6334(a) are for unemployment benefits (section 6334(a)(4)), workmen's compensation (section 6334(a)(7)), the "[m]inimum exemption for wages, salary, and other income" (section 6334(a)(9)), and certain public assistance (section 6334(a)(11)).

The only category Marsh's state retirement payments could possibly fall within is section 6334(a)(9). Section 6334(a)(9) exempts from levy a certain portion of wages, salary, and other income. Before section 6331(h) took effect, unemployment benefits, workmen's compensation, and certain public assistance payments were also exempt from levy. Section 6331(h) changed the law to permit continuous levies on such payments and to allow a continuous levy on up to 15 percent of the minimum exemption for wages, salary, and other income.

Marsh reads the words "notwithstanding section 6334" in section 6331(h) as eliminating the right of the IRS to levy amounts exceeding the "minimum exemption" referred to in section 6334(a)(9). According to Marsh, section 6331(h) now limits any continuous levy on wages, salary, and other income to 15 percent of the wages, salary, and other income. This reading makes a nullity of 26 U.S.C. § 6334(d), which calculates the exempt amount listed in section 6334(a)(9). The court declines to read section 6331(h) as repealing provisions not expressly repealed. Instead, the court reads section 6331(h) as expanding the right of the IRS to levy amounts previously exempt from levy under section 6334. This reading gives effect to all of the statutory provisions in issue. See H.R.Rep. No. 148, at 1061 (1997), *reprinted in* 1997 WL 353016, U.S.Code Cong. & Admin.News 1997, p.

678 ("The Committee believes that if wages are subject to levy, wage replacement payments should also be subject to levy. In addition, the Committee believes that it is inappropriate to exempt from levy one type of annuity or pension payment while most other types of these payments are subject to levy"). Thus, the court reads section 6331(h) as subjecting to levy the minimum exemption for wages, salary, and other income.

What this means is that, instead of being permitted to levy only the excess over the exempt amount, the IRS could levy that excess plus up to 15 percent of the exempt amount. When the September 19, 1997 levy was served, Marsh was entitled to $1262.58 from the Retirement System twice a month. Under section 6334(d), Marsh was allegedly[10] entitled to a minimum exemption of $258.33, which meant the IRS was entitled to $1004.25.[11] Under section 6331(h), the IRS was, in addition, entitled to levy continuously 15 percent, or $38.75, of the $258.33 minimum exemption. In short, the IRS was entitled to collect $1043.00 ($1004.25 plus $38.75) twice a month. Marsh was then entitled to a semi-monthly payment of $219.58, or $258.33 minus $38.75. Marsh actually received $299.58[12] semi-monthly, which is more than he was entitled to receive under this scenario. Thus, Marsh was not deprived of the proper exemption amount, and the exemption cannot be the basis for a section 7433 claim.

---

**10.** The United States claims that, even though the IRS gave Marsh the exemption, Marsh was not entitled to receive that exemption if he had other sources of income in excess of the exempt amount. The record shows that Marsh refused to provide evidence of his financial condition. Thus, Marsh has not met his burden of demonstrating his entitlement to the exemption. Marsh's failure to meet this burden provides yet another reason that Marsh cannot maintain his section 7433 claim with respect to the exemption.

**11.** The exempt amount is the sum of the standard deduction and the aggregate amount of the deductions for personal exemptions allowed the taxpayer under 26 U.S.C. § 151. When the income is received periodically, the

total amount is divided by the appropriate number of annual payments. *Id.* § 6334(d). Under § 6634(d)(2), the amount is to be calculated by dividing the sum of the standard deduction for a married individual filing separately ($3,550) and the personal exemption amount ($2,650) by the number of payments (24). Under this formula, the semi-monthly statutory exemption amount would be $258.33.

**12.** In giving Marsh an exemption of $299.58, the IRS apparently added 15 percent of the minimum exemption to Marsh's minimum exemption, instead of subtracting 15 percent. This error is harmless for purposes of Marsh's Counterclaim, as Marsh received more than he was entitled to receive.

*CONCLUSION*

Based on the foregoing, the court grants summary judgment on the Counterclaim. This order disposes of Plaintiff's Motion to Dismiss Counterclaim of John W. Marsh, which this order treats as a motion for summary judgment.

IT IS SO ORDERED.