**Bruce DZIURA and Ann Dziura,
Plaintiffs, Appellants,**

v.

**UNITED STATES of America,
Defendant, Appellee.**

No. 98–1889.

United States Court of Appeals,
First Circuit.

Heard Feb. 3, 1999.

Decided Feb. 26, 1999.

Gerald Glasser, with whom Kalill, Glasser and Associates was on brief, for appellants.

Sara Ann Ketchum, Attorney, Tax Division, United States Department of Justice, with whom Loretta C. Argrett, Assistant Attorney General, Donald K. Stern, United States Attorney, and Jonathan S. Cohen, Attorney, Tax Division, were on brief, for appellee.

Before SELYA, STAHL and LIPEZ, Circuit Judges.

SELYA, Circuit Judge.

This appeal pivots on the accrual date for the two-year statute of limitations applicable to certain actions against the Internal Revenue Service (IRS). We hold that the taxpayers' cause of action accrued more than two

years before the date of suit. Consequently, we affirm the district court's dismissal of the taxpayers' complaint.

The events that gave rise to this action paint an interesting picture. Bruce and Ann Dziura owed substantial back taxes for 1989 and subsequent years. After some skirmishing (not relevant here), the IRS seized two Andrew Wyeth paintings owned by the Dziuras. It then prepared a so-called seizure and sale worksheet on May 10, 1993, notified the taxpayers of its intent to sell the paintings, and set minimum bid prices for each. The IRS thereafter gave the statutorily required public notice, see 26 U.S.C. § 6335(b), and attempted to auction both paintings on September 23, 1993. One of them sold. The other—which we shall call "Painting No. 2"— failed to achieve the minimum bid price ($60,-000). The IRS did not return Painting No. 2 to the taxpayers.

On December 6, 1993, the IRS notified the taxpayers that it would again endeavor to auction Painting No. 2, this time employing a minimum bid price of $30,000. The IRS kept the painting until May 25, 1994, when it was sold at a second auction for $30,000.

The Internal Revenue Code specifically provides that if the IRS, in the course of a tax collection effort, "recklessly or intentionally disregards any provision of [the Code]," the affected taxpayer(s) "may bring a civil action for damages against the United States in a district court of the United States." Id. § 7433(a). Invoking this private right of action, the Dziuras sued the United States on April 16, 1996, pointing out that applicable law mandated restoration of the unsold painting to them after the failed auction. See id. § 6335(e)(D). The proposition on which the taxpayers rely is legally sound. The law requires that, after seizing a taxpayer's property and giving proper notice of an intended sale, the IRS must sell what it has seized no "less than 10 days nor more than 40 days

from the time of giving public notice." Id. § 6335(d). If not sold within that interval, the property "shall be released to the owner." Id. § 6335(e)(D).

Congress intended this 40–day time limit to be obligatory, subject only to a grant of authority to the Treasury Secretary to provide by regulation for adjournments of a scheduled sale, not to exceed one month in the aggregate. See id. § 6335(e)(2)(F); see also Anderson v. United States, 44 F.3d 795, 798 (9th Cir.1995) (explaining that the Code "expressly limits such delays to one month"). The relevant regulation tracks the Code and establishes a one-month maximum for any delays. See 26 C.F.R. § 301.6335–1(c)(2). At the outside, this gives the IRS a window of 40 days plus one month for retention of a taxpayer's property.

■ By retaining Painting No. 2 for some eight months (nearly 250 days) following the failed first auction, the IRS flouted the clear command of section 6335(e)(D). See Anderson, 44 F.3d at 799 (explaining that "[w]hat [the government] cannot do, in the face of the mandatory statutory command to 'release' the property, is hold onto it"). Building on this foundation, the taxpayers insist that they are entitled to damages. The rub is that all actions filed under 26 U.S.C. § 7433(a) "may be brought only within 2 years after the date the right of action accrues." 26 U.S.C. § 7433(d)(3). Because the taxpayers filed suit on April 16, 1996, their claim is not timeous unless it accrued on or after April 16, 1994.

At first blush, one would think that the cause of action accrued on the occasion of the failed first sale (September 23, 1993), or, at the outside, when the maximum retention period expired (as we calculate it, no later than November 23, 1993).[1] Both of these dates are well beyond the accrual period. To avoid this apparent time bar, the taxpayers asseverate that each day the IRS illegally

---

1. As said, the IRS had no "less than 10 days nor more than 40 days from the time of giving public notice" within which to effectuate the first sale. 26 U.S.C. § 6335(d). The record in this case does not reflect the date on which the IRS published the notice, so we assume, favorably to the taxpayers, that it was published only 10 days prior to the designated sale date, and that the

IRS lawfully could retain the unsold painting for the balance of the 40–day period, i.e., until October 23, 1993. We then add the maximum one-month adjournment time, see id. § 6335(e)(2)(F); 26 C.F.R. § 301.6335–1(c)(2), assuming, again favorably to the taxpayers, that "one month" equals 31 days. These computations bring us to an outside date of November 23, 1993.

withheld Painting No. 2 from them constituted a new violation of the statute, and, therefore, their cause of action did not accrue until the date of the second auction (May 25, 1994), when the government finally relinquished possession of Painting No. 2. The district court rejected this "continuing violation" hypothesis, and so do we.

The taxpayers' theory cannot carry the weight that they load upon it. "Continuing violation" jurisprudence is drawn from tort law. The doctrine is generally thought to be inapposite when an injury is definite, readily discoverable, and accessible in the sense that nothing impedes the injured party from seeking to redress it. *See Wilson v. Giesen,* 956 F.2d 738, 743 (7th Cir.1992); *cf. Gilbert v. City of Cambridge,* 932 F.2d 51, 58–59 (1st Cir.1991) (recognizing the vital distinction "between a continuing act and a singular act that brings continuing consequences in its wake"). Thus, absent a disability or other impediment to suit, the applicable limitation period ordinarily will begin to run when an injured party knows or should know the critical facts related to his claim.[2] *See United States v. Kubrick,* 444 U.S. 111, 122–24, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); *Rodriguez v. Banco Central,* 917 F.2d 664, 665–66 (1st Cir.1990); *Paterson–Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.,* 840 F.2d 985, 995 (1st Cir.1988). The implementing regulations suggest that this general rule also applies to cases under section 7433(a). *See* 26 C.F.R. § 301.7433–1(g)(2) (stipulating that a cause of action brought under section 7433(a) "accrues when the taxpayer has had a reasonable opportunity to discover all essential elements of a possible cause of action").[3]

The taxpayers' case cannot survive scrutiny under these criteria. It seems highly likely that they knew (or, at least, should have known) that Painting No. 2 did not sell at the first auction. Even giving them the benefit of every doubt, they *must* have known of this circumstance by December 6, 1993, when the IRS notified them of the proposed second auction and suggested a new minimum bid price. Similarly, the taxpayers—like the IRS itself—were chargeable with knowledge of the law, and thus with knowledge that the IRS had a duty to return the unsold painting promptly. And the taxpayers surely knew that Painting No. 2 had not been returned within the mandated period. It follows inexorably that, on any reading of the record, the taxpayers knew the essential elements of their potential claim no later than December 6, 1993. Because they waited more than two years from that date before taking action, their suit was time-barred.

We need go no further.[4] To give credence to the taxpayers' continuing violation theory would, in these circumstances, scuttle a statute of limitations that Congress purposefully wrote and turn it into a dead letter. We refuse to take that path, for to do so "would wreak havoc with the law's ability to grant repose and would be an open invitation to the assertion of the stalest of claims." *Paterson–Leitch,* 840 F.2d at 995.

*Affirmed.*

---

2. The taxpayers in the case at bar do not allege that they were under any disability or that they faced any cognizable impediment.

3. We do not foreclose the possibility that an unusual set of circumstances might arise in which a continuing violation theory would allow a taxpayer to assert that he could not have discovered the essential elements of his section 7433(a) claim until more than two years following the date of the initial wrong. *See, e.g., Hurt v. United States,* 914 F.Supp. 1346, 1355–56 & n. 6 (S.D.W.Va.1996). The instant case falls within the general rule, however, not within the long-odds exception to it.

4. Because the government's temporal defense is impregnable, we need not consider its alternative arguments.