**Paul HYNARD, Plaintiff,**

v.

**INTERNAL REVENUE SERVICE and United States of America, Defendants.**

**No. 01CIV.9840(LSMCM).**

United States District Court, S.D. New York.

Oct. 9, 2002.

remains, at this point, a defendant in this lawsuit.

Megan L. Brackney, Assistant United States Attorney, New York City, for Plaintiff.

Paul O. Hynard, Yonkers, NY, Pro se.

## MEMORANDUM DECISION AND ORDER GRANTING GOVERNMENT'S CROSS–MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

MCMAHON, District Judge.

In this action, *pro se* plaintiff Paul Hynard ("the plaintiff") seeks a credit or re-

fund for an alleged overpayment of federal income taxes in the amount of $10,211.51 for the 1988 and 1989 tax years. Plaintiff has attempted to deduct an alleged loss resulting from his failure to collect on a promised payment from a relative as a bad debt pursuant to 26 U.S.C. § 166. Summary judgment in defendants' favor is warranted on this issue because plaintiff has not offered evidence tending to show that the alleged debt is a bona fide debt which became worthless during the tax years in question. Rather, the undisputed facts make two things clear: there was no bona fide debt, and the alleged loss did not arise in the tax years at issue.

Plaintiff also challenges the IRS's March 26, 1993 assessment of a deficiency for the 1988 and 1989 tax years on the ground that the IRS did not send the Notice of Deficiency to his current address. Defendant is entitled to summary judgment on this issue as well, because there is no dispute that the IRS sent plaintiff the Notice of Deficiency to plaintiff's last-known address and that plaintiff did indeed receive the Notice of Deficiency.

Finally, plaintiff challenges the IRS's levy of his personal checking account, again claiming that the IRS failed to send him notice to his current address. Plaintiff admits, however, that he did not submit notice of a change of address to the IRS and that he received actual notice of the levy from his bank prior to its execution. Thus, summary judgment should be granted in defendants' favor on this issue as well.

### Statement of Facts

On April 17, 1989, plaintiff filed a federal income tax return for the tax year ending on December 31, 1988. *See* Declaration of Arnold B. Rifkin ("Rifkin Decl.") ¶ 5, Exhibit ("Ex.") A; Declaration of Megan L. Brackney ("Brackney Decl.") Exhibit A (Transcript of the May 22, 2002 deposition of Paul Hynard), at 7–9. On February 16, 1991 and December 14, 1991, plaintiff submitted amended individual income tax returns (Form 1040X) for the 1988 tax year. Rifkin Decl. Ex. B, C; Brackney Decl. Ex. A at 11–14. On March 26, 1990, plaintiff filed a federal income tax return for the tax year ending on December 31, 1989. Rifkin Decl. Ex. J; Brackney Decl. Ex. A at 31. On November 1, 1990 and on December 24, 1991, plaintiff filed amended individual tax returns for 1989. Rifkin Decl. Ex. K and L; Brackney Decl. Ex. A at 34–35.

Plaintiff's December 14, 1991 amended tax return for 1988 and plaintiff's December 24, 1991 amended tax return for 1989 list 10 Cherry Lane, Medford, New York, 11763–4084 as plaintiff's address. Rifkin Decl. Ex. J and L. On March 26, 1993, the IRS sent to plaintiff at 10 Cherry Lane, Medford, New York, 11763–4084 a Notice of Deficiency for the 1988 and 1989 tax years. Rifkin Decl. Ex. P. Plaintiff admits to having received the Notice of Deficiency in February 1994. Brackney Decl. Ex. B (Complaint) at ¶ 5(n).

On September 1, 1994, plaintiff filed additional amended tax returns for the 1988 and 1989 tax years. Rifkin Ex. D and M; Brackney Decl. Ex. A at 18–19, 21–24. With the September 1, 1994 amended tax returns, plaintiff submitted a Schedule D form for Capital Gains and Losses in which he claimed a $3,000 bad debt deduction for each year. *Id.* In his September 1, 1994 amended returns, plaintiff claimed that he was entitled to a $3000 bad debt deduction for 1988 and 1989 because his step-brother, Vicha Hynard, did not repay a $45,000 debt. Rifkin Decl. Ex. D, M. Plaintiff claims that Vicha Hynard shot plaintiff and then agreed to pay him $45,000 for having shot him. Brackney Decl. Ex. A at 25–29. On April 26, 1987, Vicha Hynard signed a document entitled

"Assignment of Benefits" in which he agreed to assign the first $45,000 of the "third division I receive in connection with the Estate of my stepfather, Edward O. Hynard, to my stepbrother, Paul Hynard, as and for the recovery of a debt to Paul, which I hereby acknowledge." Rifkin Decl. Ex. E; Brackney Decl. Ex. A at 27–28.

On June 12, 1992, Edward O. Hynard died. Rifkin Decl. Ex. I; Brackney Decl. Ex. A at 28. Plaintiff testified that he learned that he would not receive any money from the estate of Edward O. Hynard sometime in 1994. Brackney Decl. Ex. A at 30. Plaintiff further claims that Edward O. Hynard's estate was probated in 1998–1999. *Id.* Plaintiff claims that he did not receive any distribution from Edward O. Hynard's estate and Vicha Hynard never paid him $45,000. *Id.* at 28–30.

In August of 1998, the IRS sent a notice of levy to Astoria Federal Savings & Loan and to plaintiff at P.O. Box 1102, Middle Island, New York, 11763. Rifkin Decl. Ex. N. The Notice of Levy notified plaintiff that a total of $9,504.48 representing due and owing tax liability for 1988 and 1989 would be levied from his bank account. *Id.* On August 27, 1998, plaintiff's bank, Astoria Federal Savings and Loan Association, sent plaintiff a copy of the Notice of Levy. Rifkin Decl. Ex. N and O; Brackney Decl. Ex. A at 43–44. In August of 1998, plaintiff was incarcerated at the Groveland Correctional Facility, but plaintiff failed to notify the IRS that he was at a different address. Brackney Decl. Ex. A at 45, 48–49.

On October 2, 1998, the IRS levied plaintiff's personal checking account at Astoria Federal Savings and Loan in the amount of $1,729.06 for unpaid taxes, interest, and penalties for the 1988 tax year and $7,7175.42 for unpaid taxes, interest, and penalties for the 1989 tax year. Rifkin Decl. at ¶¶ 15, 33.

Prior to filing this suit on November 7, 2001, plaintiff had paid his full tax liability for the 1988 and 1989 tax years. Rifkin Decl. ¶¶ 19, 37 (as of October 22, 2001, plaintiff's accounts for 1988 and 1989 had a zero balance).

## STANDARD FOR SUMMARY JUDGMENT

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Whether any disputed issue of fact exists is for the Court to determine. *Balderman v. United States Veterans Admin.*, 870 F.2d 57, 60 (2d Cir.1989). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary

judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

Applying this standard, plaintiff's motion for summary judgment must be denied and defendants' cross-motion granted.

## PLAINTIFF IS NOT ENTITLED TO A BAD DEBT DEDUCTION

Plaintiff appears to claim that he is entitled to a bad debt deduction of $3,000 for the 1988 tax year and $3,000 for the 1989 tax year.[1]  Brackney Decl. Ex. A at ¶¶ 5(a)-(g), 5(k), 6(a)-(d), Ex. B at 23–24, 36–38, 50–52; Rifkin Decl. Ex. D, M. However, the undisputed facts show that plaintiff has failed to establish the elements of either a business or a nonbusiness bad debt under 26 U.S.C. § 166.  Therefore, defendants are entitled to summary judgment on this issue and plaintiff's motion for summary judgment should be denied.

### A. Plaintiff Bears the Burden of Proof that He Is Entitled to a Deduction

■ The burden of proof with respect to a claimed tax deduction rests upon the taxpayer.  *Wisely v. United States*, 893 F.2d 660, 666 (4th Cir.1990) ("deductions are a matter of legislative grace, and the taxpayer seeking the benefit of a deduction must show that every condition which Congress has seen fit to impose is fully satisfied").  Likewise, the burden of proof with respect to a bad debt deduction is on the taxpayer.  *Davis v. C.I.R.* 866 F.2d 852, 859 (6th Cir.1989) (citing *Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933)).  To meet this burden, a taxpayer must, as a matter of law, make an affirmative showing supported by specific evidence that he is entitled to the challenged deductions.  *LaBow v. Comm'r of Internal Revenue*, 763 F.2d 125, 131–32 (2d Cir.1985) (taxpayer "must always make an affirmative showing, based on 'specific evidence' and not just the 'taxpayer's unsupported statement,' that he is entitled to a deduction") (quoting *Hintz v. Commissioner*, 712 F.2d 281, 286 (7th Cir.1983)).

### B. Plaintiff Is Not Entitled to a Bad Debt Deduction

Debts owed to a taxpayer which become worthless during the taxable year are deductible from gross income pursuant to Section 166 of the Internal Revenue Code. 26 U.S.C. § 166.  A business bad debt is

---

1. The Court has jurisdiction over plaintiff's tax refund claims for 1988 and 1989.  First, plaintiff has paid his entire tax liability for the 1988 and 1989 tax years.  *See* Rifkin Decl. ¶¶ 19, 37; 26 U.S.C. § 1346(a)(1); *Falik v. United States*, 343 F.2d 38, 43 (2d Cir.1965) (taxpayer must "pay first and litigate later") (internal citation omitted).  Second, plaintiff filed a timely administrative claim.  A claim for a bad debt deduction under 26 U.S.C. § 166 must be filed within seven years of the date the tax return was required to have been filed.  26 U.S.C. § 166(d)(1)(A).  Plaintiff claimed a bad debt deduction on his September 1, 1994 amended tax returns for 1988 and 1989, within the seven year period.  Third, plaintiff timely filed suit in the district court. The Internal Revenue Code provides:

    (a) Suits by taxpayers for refund.—
    (1) General rule.—No suit or proceeding under section 7422(a) for the recovery of

any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.

26 U.S.C. § 6532(a)(1).  Here, plaintiff's suit was filed on November 7, 2001, well after the expiration of six months from the September 1, 1994 filing date of the amended returns.  It does not appear that the IRS ever sent plaintiff a notice of disallowance of the September 1, 1994 amended tax returns for 1988 and 1989, and, thus, the two-year statute of limitations is not implicated.

fully deductible from ordinary income, however, a nonbusiness bad debt of a noncorporate taxpayer is treated as a short-term capital loss. *Marrin v. C.I.R.*, 147 F.3d 147, 150 (2d Cir.1998); 26 U.S.C. ¶ 166(d)(1). Section 1211(b) restricts the deduction for capital losses of a non-corporate taxpayer to the $3,000. *Marrin*, 147 F.3d at 150; 26 U.S.C. § 1211(b).

Plaintiff does not state whether he is entitled to a bad business or a bad non-business debt deduction. I conclude that the so-called debt was a nonbusiness debt. Plaintiff did not attempt to deduct the $45,000 debt in full; rather, he claimed a $3,000 deduction for both the 1988 and 1989 tax years, which is more consistent with a nonbusiness bad debt deduction. Moreover, the document that allegedly gives rise to the debt has nothing to do with any trade or business. The April 26, 1987, "Assignment of Benefits," which plaintiff identifies as the written agreement memorializing this debt, states:

> I, Vicha Hynard, hereby agree to assign the first FORTY–FIVE THOUSAND and 00/100 DOLLARS ($45,000.00) of the third division I receive in connection with the Estate of my stepfather, Edward O. Hynard, to my stepbrother, PAUL HYNARD, as and for the recovery of a debt to Paul, which I hereby acknowledge.

Rifkin Decl. Ex. E. Plaintiff claims that his step-brother signed the above-described document after shooting him. Brackney Decl. Ex. A at 25–27.

Assuming that the debt is a nonbusiness debt—defined as a debt other than one created or acquired in connection with a trade or business of the taxpayer. 26 U.S.C. § 166(d)(1)(B)—plaintiff is not entitled to a bad debt deduction. Section 166(d) of the Internal Revenue Code provides that a taxpayer may deduct a non-business bad debt if he or she can establish two elements: (1) the existence of a bona fide debt; and (2) that the bona fide debt became completely worthless during the taxable year in question. 26 U.S.C. § 166(d). In this case, plaintiff has not satisfied either element.

■ As an initial matter, the alleged $45,000 debt is not a bona fide debt. The Treasury Regulations define a "bona fide debt" as "a debt which arises from a debt-or-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." 26 C.F.R. § 1.166–1(c). A "debtor-creditor" relationship contemplates that the taxpayer has made a loan. *See Peoplefeeders, Inc. and Subsidiaries v. C.I.R.*, 1999 WL 49780 (U.S.Tax Ct.), 77 T.C.M. (CCH) 1349 (Feb. 4, 1999). The inquiry is whether the parties actually intended and regarded the transaction as a loan. *Estate of Van Anda v. Commissioner,* 12 T.C. 1158, 1163, 1949 WL 301 (1949), *aff'd per curiam,* 192 F.2d 391 (2d Cir.1951). Here, plaintiff admits that the alleged debt was not a loan. Brackney Decl. Ex. A at 25. Rather, it appears that the step-brother promised to pay plaintiff some money to recompense him for the injury plaintiff suffered at his hands. Thus, plaintiff and his step-brother do not have a "debtor-creditor" relationship.

Also, the alleged debt is not bona fide because it is not an obligation to pay a "fixed or determinable sum of money." Plaintiff claims that there was a written agreement between himself and Vicha Hynard stating that Vicha Hynard would pay him $45,000 out of the proceeds of their father's estate. Plaintiff's father, Edward O. Hynard, died on June 12, 1992, *see* Rifkin Decl. Ex. I, after this assignment was executed. Vicha Hynard had no interest in the estate of his father until his father died in 1992. Until his father died, neither the amount of property in the estate nor the beneficiaries of the estate

could not be determined. Thus, at the time this document was executed, Vicha Hynard had no right to any distribution from Edward Hynard's estate at all, much less to a distribution in the amount of $45,000. When Vicha Hynard signed the April 27, 1987 "Assignment of Benefits," the amount of money plaintiff would receive, if any, was not fixed and could not be determined.

■ Even if plaintiff could establish that there was a bona fide debt, he is not entitled to a bad debt deduction for 1988 or 1989 because the debt did not become worthless in 1988 or 1989. *See* 26 U.S.C. § 166(a)(1) (taxpayer may deduct "any debt which becomes worthless within the taxable year"). The alleged assignment was created on April 26, 1987. Rifkin Decl. Ex. E. The obligation to repay was contingent on the death of Edward O. Hynard and the amount of any distribution from his estate, since the promise to pay was limited to estate proceeds. *See id.* Edward O. Hynard did not die until 1992, *see* Rifkin Decl. Ex. I, and the estate was probated in 1992–93. Brackney Dec. Ex. A at 30. Plaintiff alleges that he learned that he would not receive the $45,000 from his father's will in 1994. *Id.* None of these events relates to either the 1988 or 1989 tax years. Consequently, there is no basis for a bad debt deduction for those tax years.

## THE NOTICE OF DEFICIENCY WAS ADEQUATE

Plaintiff claims that IRS did not provide him proper notice of the deficiency assessed against him on March 23, 1996 for the 1988 and 1989 tax years. *See* Brackney Ex. B at ¶¶ 5(m)-(n). This claim is without merit.

■ In order to collect a deficiency in income tax, the IRS must send the taxpayer notice of deficiency at his or her "last known address." 26 U.S.C. § 6212(b)(1);

*Follum v. Commissioner of Internal Revenue*, 128 F.3d 118, 119 (2d Cir.1997). The taxpayer's "last known address is the address where the Commissioner reasonably believed the taxpayer wished to be reached." *Id.* (quoting *Tadros v. Commissioner*, 763 F.2d 89, 91 (2d Cir.1985)). As a matter of law, the address shown on the taxpayer's most recently filed return is the last known address unless the taxpayer has sent the IRS a notice of change of address. *Follum*, 128 F.3d at 119. The reasonableness of the Commissioner's belief as to what the taxpayer's last known address is to be assessed as of the time of the IRS mailing. *Id.* Although the Commissioner must "exercise reasonable diligence to ascertain the taxpayer's correct address if prior to mailing the deficiency notice she has become aware that the last known address may be incorrect, ... [it] is the responsibility of the taxpayer to provide clear and concise notification to the IRS of any change of address." *Id.* at 119–20.

■ Plaintiff listed his address as 10 Cherry Lane, Medford, New York on his December 14, 1991 and December 24, 1991 amended tax returns for 1988 and 1989. *See* Rifkin Ex. B.L. On March 26, 1993, the IRS mailed the Notice of Deficiency to plaintiff at 10 Cherry Lane, Medford, New York. Brackney Decl. Ex. B at ¶ 5(m); Rifkin Decl. Ex. P. Plaintiff does not allege that he notified the IRS that he had a new address prior to March 26, 1993, *see* Brackney Decl. Ex. B at ¶ 5(n), and there is no evidence that he did so.

■ In any event, as long as the notice was in fact provided to the taxpayer, the deficiency could be assessed. *Sicari v. Commissioner of Internal Revenue*, 136 F.3d 925, 929 (2d Cir.1998) ("Even if the notice was inadequately addressed, the requirement of effective notice would be satisfied if the Service could prove, by a

preponderance of the evidence, that the envelope containing the notice was in fact delivered to the [plaintiff's] residence"); *Bonty v. Commissioner of Internal Revenue,* 74 T.C.M. (CCH) 322, 323, 1997 WL 461910 (1997) ("[A] taxpayer's actual receipt of a notice of deficiency, without prejudicial delay, obviates the need to decide whether the notice was mailed to the last known address").

Plaintiff admits that he received the notice of deficiency in February 1994. *See* Brackney Decl. Ex. B at ¶ 5(n). The only prejudice plaintiff claims he suffered as a result of the alleged delay in receiving the notice of deficiency is that a prior lawsuit that he filed in the United States District Court for the Eastern District of New York was dismissed as a result of his failure to file within 90 days of the notice of deficiency. *See id.* This is an inaccurate characterization of what happened in the 1994 lawsuit; the court dismissed plaintiff's complaint for lack of jurisdiction because plaintiff had not paid the deficiency prior to filing suit, not because he failed to file within 90 days of the notice. *See Hynard v. Internal Revenue Service,* 881 F.Supp. 92, 94 (E.D.N.Y.1994). Indeed, there is no requirement that the plaintiff file suit in United States District Court within 90 days of the challenged determination. The 90 day requirement applies to filing a petition for redetermination in United State Tax Court. *See.* 26 U.S.C. § 6503. As explained in note 1 *supra.* a suit in federal district court brought under 26 U.S.C. § 7422 may be filed any time after six months after the claim was filed or within two years after the IRS has notified the taxpayer that the claim is disallowed. 26 U.S.C. § 6532(a)(1).

### THE IRS LEVY WAS PROPER

Finally, plaintiff challenges the IRS' levy of his personal checking account for taxes he owed for the 1988 and 1989 tax years. Plaintiff contends that the levy was improper because the IRS did not send notice of its intent to levy to his last known address. *See* Brackney Decl. Ex. B at 5(g), (h). Although plaintiff does not identify any authority that gives him a private right of action on this basis, sections 7426 and 7433 of the I.R.C. provide causes of action to taxpayers alleging an invalid or improper collection of a federal tax. However, the Government is entitled to judgment in its favor as a matter of law under either of these provisions.

### A. Section 7433 of the I.R.C.

Plaintiff fails to state a claim for an improper collection pursuant to section 7433 of the I.R.C., which provides, in relevant part:

If, in connection with any collection of Federal tax with respect to a taxpayer, any officer of employee of the Internal Revenue Service recklessly or intentionally disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

26 U.S.C. § 7433(a). An action to enforce liability under section 7433 "[m]ay be brought only within two years after the date the right of action accrues." 26 U.S.C. § 7433(d)(3). A cause of action accrues "when the taxpayer has had a reasonable opportunity to discover all essential elements of a possible cause of action." 26 C.F.R. § 301.7433–1(g)(2). The two-year statute of limitations of section 7433 is not subject to equitable tolling, even where the taxpayer seeks to exhaust administrative remedies. *See United States v. Marsh,* 89 F.Supp.2d 1171, 1176–77 (D.Hawai'i 2000).

Plaintiff claims that the IRS failed to properly provide him notice of its intent to levy his checking account at his last known

address. Complaint ¶¶ 5(g). Plaintiff attaches to the Complaint the IRS' notice of levy. Plaintiff admits that he received a copy of the notice of levy from his bank in August of 1998. Exhibit Q at 43–44. Accordingly, plaintiff not only had a "reasonable opportunity to discover" the facts supporting a possible cause of action for an improper levy, but he also had actual notice of the IRS levy in August of 1998. Plaintiff failed to file his action within two years after admittedly learning about the levy. Thus, his challenge to the levy is untimely and must be dismissed.

■■■■■ Moreover, section 7433 of the I.R.C. provides a remedy for improper collection of federal taxes only where an employee of the IRS recklessly or intentionally disregards a statute or regulation. It cannot be used to challenge improper assessment of taxes. *Miller v. United States*, 66 F.3d 220, 222 (9th Cir.1995); *Shaw v. United States*, 20 F.3d 182, 184 (5th Cir.1994). To the extent plaintiff is challenging the levy, the complaint must be dismissed unless it alleges facts sufficient to demonstrate that IRS employees recklessly or intentionally disregarded some provision or regulation of the Internal Revenue Code. *See* 26 U.S.C. § 7433(a). Although the IRS is required to provide notice to the taxpayer at his or her "last known address" before levy, *see* 26 U.S.C. § 6331(d)(2)(C), the IRS did not recklessly or intentionally disregard the notice requirements of section 6331(d) of the I.R.C. To the contrary, the IRS acted properly.

As explained above in the context of a notice of deficiency, the taxpayer's "last known address is the address where the Commissioner reasonably believed the taxpayer wished to be reached." *Follum v. Commissioner of Internal Revenue*, 128 F.3d 118, 119 (2d Cir.1997) (quoting *Tadros v. Commissioner*, 763 F.2d 89, 91 (2d Cir.1985)). It is the taxpayer's responsibility to provide "clear and concise notification to the IRS of any change of address." *Follum*, 128 F.3d at 119.

In August of 1998, the IRS sent the notice of levy to plaintiff at P.O. Box 1102, Middle Island, NY, the address plaintiff provided in his September 1, 1994 amended tax returns for 1988 and 1989. Rifkin Decl. Ex. D, M. From September 1996 through August of 1998, plaintiff was incarcerated at the Groveland Correctional Center. Brackney Decl. Ex. A at 45. Plaintiff admits, however, that he did not notify the IRS that he had a new mailing address, namely Groveland Correctional Center:

Q. What I am asking is did you ever send a change of address or any kind of notice to the IRS that your new address was Groveland Correctional Facility?

A. No, I am not going to do.

Q. So you are saying that you never notified them of the address change?

A. I don't need to when they put off since 1995 and they do anything, so since I was incarcerated, I got to wait until when they come out, what are you doing to do any good. They ignore me already in '94 and '95, my amendment plus a claim and the claim they made already before is the Statute of Limitations in three-year and seven-year for a bad debt. So I made before all those times and they ignore me all that. I wait until I come out because I had no documents to show all of this.

Q. You are saying that you never notified the IRS of your new address when you were in prison?

A. What is the question?

Q. You are saying that you never notified the IRS of your new address?

A. No, I don't. This is not important. Brackney Decl. Ex. A at 48–49. Thus, there is no dispute that plaintiff failed to provide the IRS with his current address. Moreover, there is no evidence that the IRS was aware that plaintiff was incarcerated and no longer at the address plaintiff provided in his September 1, 1994 amended tax returns. The Government is entitled to judgment in its favor on this issue.

## B. Section 7426 of the I.R.C.

 Plaintiff's claim could be construed as one for wrongful levy pursuant to section 7426 of the I.R.C., but plaintiff fails to establish a waiver of sovereign immunity necessary for subject matter jurisdiction over such a claim. Section 7426 waives sovereign immunity to permit persons other than taxpayers to bring actions against the United States for wrongful levy. In authorizing this cause of action, the statute only waives sovereign immunity for persons "other than the person against whom is assessed the tax out of which such levy arose." 26 U.S.C. § 7426(a)(1). Like all matters relating to sovereign immunity, this statute is strictly construed. It is well-settled that the "United States, as sovereign, is immune from suit save as it consents to be sued ..., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941));

*see also Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir.1994). The plaintiff asserting subject matter jurisdiction, moreover, has the burden of proving by a preponderance of the evidence that it exists. *See Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir.1996).

 Here, there is no subject matter jurisdiction under 26 U.S.C. § 7426(a)(1) because plaintiff is not a third-party. For example, in *Akers v. United States*, 539 F.Supp. 831 (D.Conn.1982), *aff'd*, 718 F.2d 1084 (2d Cir.1983), the court held that it lacked jurisdiction with respect to the plaintiff's wife claim against the United States pursuant to § 7426(a)(1) because the tax was assessed to both the plaintiff and his wife. Here, the levy related to taxes assessed and collected directly against Plaintiff. Accordingly, the Court lacks jurisdiction under § 7426.[2]

## CONCLUSION

For the reasons stated above, defendants are entitled to judgment as a matter of law in their favor.

---

2. Any claim under section 7426 also would be time-barred. Section 7426 also mandates that to waive sovereign immunity, the plaintiff must bring the cause of action within nine months of the date of the levy. 26 U.S.C. § 7426(a). *See also Williams v. United States*, 947 F.2d 37, 39 (2d Cir.1991) ("[T]he statute of limitations may operate in suits against the United States not only as an affirmative defense ... but also may deprive a court of subject matter jurisdiction over an action that

is not timely filed."). The levy at issue here occurred on October 2, 1998, *See* Rifkin Decl. Ex. G. Plaintiff filed this suit on November 14, 2001. Thus, even assuming, *arguendo*, that plaintiff had been a third-party entitled to bring an action under § 7426(a), the nine-month statute of limitations for a wrongful levy action would have expired on June 29, 1999, over two years before plaintiff filed this suit.