**Leonard BRIGHT, Plaintiff**

v.

**UNITED STATES of America, Defendant.**

**Civil Action No. 97–23.**

United States District Court, E.D. Pennsylvania.

July 21, 2006.

Leonard Bright, Easton, PA, Pro se.

Dayna K. Olson, U.S. Dept. of Justice, Tax Division, Pat S. Genis, U.S. Attorney's Office, U.S. Dept. of Justice, Washington, DC, for Defendant.

## MEMORANDUM OF DECISION

WELLS, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff, Leonard Bright ("Plaintiff"), commenced this action against the United States of America, ("Defendant"), on January 3, 1997.[1] He alleges that the Internal Revenue Service ("IRS") levied against his wages without providing him prior notice of deficiency as required by 26 U.S.C. § 6212,[2] thereby denying him the opportunity to seek redetermination of the deficiency in the tax Court under 26 U.S.C. § 6213. Plaintiff also alleges the IRS failed to provide him notice of the intent to levy as required by 26 U.S.C. § 6331. He further alleges that the IRS failed to provide him notice of the September 27, 1994 and January 24, 1995 levies on his salary. Plaintiff seeks to recover damages for these procedural deficiencies under 26 U.S.C. § 7433. Defendant counters that it complied with the requirements of 26 U.S.C. §§ 6212, 6331, inasmuch as it mailed any required notices to Plaintiff's last known address.

The Honorable Louis H. Pollak referred this matter to the undersigned on July 1, 2002 "to conduct all proceeding[s] and order the entry of judgment." (Doc. No. 74). Accordingly, on August 27, 2002, this court held a bench trial. Having considered the trial testimony, as well as the exhibits presented at trial, the court will determine[3] Plaintiff's rights under 26 U.S.C.

---

1. In his complaint, Plaintiff initially named Margaret Richardson, Commissioner of the Internal Revenue Service, as Defendant. The United States of America was substituted as the proper named defendant by Order of the Honorable E.M. Troutman dated November 10, 1997. (Doc. No. 13).

2. Unless the court indicates otherwise, all citations to the United States Code ("U.S.C.") are to the United States Code Annotated (1989) and the 1995 West Supplement.

3. This Memorandum of Decision contains the court's findings of fact and conclusions of law as permitted by Fed.R.Civ.P. 52(a), even though the court's findings of fact and conclu-

§ 7433. More specifically, this court must determine if the IRS recklessly or intentionally disregarded the requirement under § 6331 that Plaintiff be served notice of its intent to levy thirty days before the levies were issued to Plaintiff's employer.[4]

Plaintiff's claim requires the court to consider whether or not, when, and where the IRS sent a notice of intent to levy to Plaintiff before it sent levies on Plaintiff's salary to his employer on September 27, 1994 and January 24, 1995. Furthermore, the court must determine where Plaintiff actually lived at the time notice should have been sent as well as what his last known address was on the date notice should have been issued. As will be explained, the court finds that the notice of intent to levy prior to the September 27, 1994 levy was sent on November 22, 1993 but was not properly sent to Plaintiff's last known address. However, the court further finds that Plaintiff's cause of action for this procedural error accrued on October 18, 1994 and, hence, his complaint, filed on January 3, 1997, exceeded the applicable two-year statute of limitations. With respect to the levies of September 27, 1994 and January 24, 1995, the court finds

that the IRS is not required by statute or regulation to provide notice of levy to a taxpayer. For this reason, Plaintiff cannot maintain a cause of action under § 7433 with respect to the September 27, 1994 and January 24, 1995 levies. Therefore, Judgment will be entered for Defendant.

## II. FINDINGS OF FACT

Plaintiff and his family resided at 737 E. Madison, El Cajon, California, from April 1989 to July 1991. (N.T. 8/27/02 at 38, 208–09). From July 1991 to May 1993, Plaintiff and his family lived at 390 West Ferry Street, Buffalo, New York. *Id.* at 38, 209. From May 1993 to October 1994, Plaintiff and his family's residence was 867 Maryland Court, Whitehall, Pennsylvania. *Id.* at 210; Defendant's Exhibit ("Def.'s Ex.") 22. On October 18, 1994, Plaintiff relocated his wife and children to his in-law's home at 182 Brinton Street in Buffalo, New York. *Id.* at 32–34, 40, 210. At this time, Plaintiff lived in his van, because he had no place to live near where he worked in Eastern Pennsylvania and New Jersey. *Id.* at 40–41. In addition, Plaintiff began using a Post Office Box in Kenilworth, New Jersey.[5] *Id.* at 41, 210. In

---

sions of law are not all set forth in the sections of this Memorandum of Decision which are designated as such.

**4.** In accordance with 26 U.S.C. § 7433, the court will only consider the "collection practices" employed by the IRS in this case, and not the validity or merits of an assessment. *Gandy Nursery, Inc. v. United States*, 318 F.3d 631, 636 (5th Cir.2003) (citing *Shaw v. United States*, 20 F.3d 182, 184 (5th Cir.), *cert. denied*, 513 U.S. 1041, 115 S.Ct. 635, 130 L.Ed.2d 540 (1994)); *Hynard v. Internal Revenue Service*, 233 F.Supp.2d 502, 510 (S.D.N.Y. 2002) (citing *Miller v. United States*, 66 F.3d 220, 222–223 (9th Cir.1995) and *Shaw*, 20 F.3d at 184); *Wise v. Comm'r of Internal Revenue*, 168 F.Supp.2d 649, 653 (S.D.Texas 2001) (citing *Miller*, 66 F.3d at 222–223 and *Shaw*, 20 F.3d at 184). This means that the court cannot consider Plaintiff's claims that

he did not receive "notice of deficiency," as required by § 6212, to which Plaintiff would have had 90 days to file a petition with the Tax Court for a redetermination of the deficiency, as permitted by § 6213. Sections 6212 and 6213 are part of Chapter 63 which deals with Assessment, which are not permitted to be considered under § 7433. *See Gandy*, 318 F.3d at 636; *Hynard*, 233 F.Supp.2d at 510; *Wise*, 168 F.Supp.2d at 653. Section 6331, which requires Notice of Intent to Levy 30 days before levying, is part of Chapter 64 dealing with Collection, and can properly be considered under a § 7433 claim. *Id.* Therefore, the court will not consider Plaintiff's claim that he was not served with notice of deficiency for the 1989 and 1990 tax years.

**5.** Plaintiff stopped using his Kenilworth, New Jersey Post Office Box in late December 1995. (N.T. 8/27/02 at 75).

August 1995, Plaintiff received a refund from the IRS for $ 3082. *Id.* at 57. Plaintiff used this money to secure a family residence at 600 Mickley Run, Whitehall, Pennsylvania; the Bright family lived at this address from August 1995 to August 1997. *Id.* at 75, 210–11. Finally, from August 1997 through the time of trial, Plaintiff and his family resided at 687 South 25th Street, Easton, Pennsylvania. *Id.* at 211.

When Plaintiff filed his 1989 tax return late, on May 1, 1990, he listed 737 E. Madison, El Cajon, California as his address.[6] (N.T. 8/27/02 at 114–15). On January 7, 1993, the IRS sent a request for Plaintiff to update his address; to 390 Ferry Street in Buffalo, New York. Plaintiff's Exhibit ("Pl.'s Ex.") 1; Def.'s Ex. 20A. Plaintiff received this mail and, on February 2, 1993, confirmed in writing that his address was 390 Ferry Street, Buffalo, New York. *Id.;* (N.T. 8/27/02 at 212). Although, in late 1994, Plaintiff submitted a return for the 1990 tax year,[7] no address was listed on it. Pl.'s Ex. 4; Def.'s Ex. 9. On February 26, 1995, Plaintiff submitted late returns for the 1992 and 1993 tax years, he indicated his address as P.O. Box 280, Kenilworth, New Jersey. Def.'s Exs. 11, 12. On February 27, 1995, Plaintiff submitted a late tax return for the 1991 tax year. Pl.'s Ex. 10; Def.'s Ex. 10. This tax return again identified the Kenilworth, New Jersey, P.O. Box as his address. *Id.*

On November 22, 1993, the IRS sent Plaintiff a notice of intent to levy for the 1990 tax year. (N.T. 8/27/02 at 134–35); Def.'s Ex. 21, page 10. The notice was sent to 737 E. Madison, El Cajon, California.[8] Almost a year later, on September 27, 1994, the Laguna Nigel, California IRS office served a notice of levy for the 1989 and 1990 tax years on Plaintiff's employer. Pl.'s Ex. 2; Def.'s Ex. 14. Plaintiff's copy of this notice was sent to the El Cajon, California address.[9] This court finds that Plaintiff first learned of this levy on October 18, 1994, when the money was actually levied from his salary for the first time. (N.T. 8/27/02 at 32–34). This levy was released on December 16, 1994 by the Mountainside, New Jersey IRS office.

---

6. Neither party produced a copy of the tax return Plaintiff filed for the 1989 tax year; thus, no direct evidence was presented to demonstrate what address Plaintiff had provided the IRS therein. However, when the IRS issued its first levy for the 1989 and 1990 tax years, on September 27, 1994, the address listed for Plaintiff was 737 E. Madison, El Cajon, California. Plaintiff's Exhibit ("Pl.'s Ex.") 2; Def's Ex. 14. In addition, when Plaintiff filed his 1989 tax return on May 1, 1990, he was living at the El Cajon address. (N.T. 8/27/02 at 38, 114–15, 208–09). In light of this evidence, the court finds that it is more probable than not that Plaintiff placed the El Cajon address on his return for the 1989 tax year.

7. The 1990 return is stamped as received by the Fresno, California Service Center on November 9, 1994 and December 8, 1994. Pl.'s Ex. 4; Def.'s Ex. 9.

8. IRS revenue officer Michael Stumpo testified that he believed the notice of intent to levy was sent to Plaintiff at 390 Ferry Street, Buffalo, New York. (N.T. 8/27/02 at 136). The court does not find that testimony to be credible. First, neither party produce a copy of the notice of intent to levy, to conclusively reveal where it was sent. Still, the record does contain a copy of the notice of levy the IRS subsequently sent to Plaintiff's employer on September 27, 1994. Pl.'s Ex. 2; Def.'s Ex. 14. The employer's copy clearly lists Plaintiff's address as 737 E. Madison, El Cajon, California. *Id.* Since the employer's copy lists Plaintiff's address as being in California, it is reasonable to infer that Plaintiff's copy of this notice was sent to his former California address as well. Hence, the court concludes that the notice of intent to levy was sent to Plaintiff's former California address.

9. *See supra* n. 8.

Pl.'s Ex. 6; Def.'s Ex. 18. However, on January 24, 1995, the Laguna Nigel, California IRS office served a new levy for the 1990 tax year on Plaintiff's employer. Pl.'s Ex. 7; Def.'s Ex. 15. Plaintiff's copy of this notice was sent to 182 Brinton Street, Buffalo, New York. *Id.* This levy was released on March 2, 1995 by the Mountainside, New Jersey IRS office. Pl.'s Ex. 11; Def.'s Ex. 19.

The parties do not dispute, therefore, the court finds that, based on the September 27, 1994 levy, the IRS deducted the following amounts from Plaintiff's salary:

| | |
|---|---|
| October 18, 1994: | $ 395.88 |
| October 25, 1994: | $ 395.88 |
| November 1, 1994: | $ 193.47 |
| November 8, 1994: | $ 193.47 |
| November 16, 1994: | $ 193.47 |
| November 22, 1994: | $ 193.47 |
| November 29, 1994: | $ 193.47 |
| December 6, 1994: | $ 193.47 |
| December 13, 1994: | $ 193.47 |
| December 20, 1994: | $ 193.47 |
| December 28, 1994: | $ 193.47. |

The parties do not dispute, therefore, the court finds that, based on the January 24, 1995 levy, the IRS deducted the following amounts from Plaintiff's salary:

| | |
|---|---|
| February 14, 1995: | $ 193.47 |
| February 22, 1995: | $ 193.47 |
| February 28, 1994: | $ 193.47 |
| March 7, 1994: | $ 193.47 |
| March 14, 1995: | $ 193.47. |

On October 18, 1994, the day the first levy was taken from Plaintiff's salary, Plaintiff and his family were packed and prepared to move from Whitehall, Pennsylvania to Bethlehem, Pennsylvania. (N.T. 8/27/02 at 32–33). Plaintiff intended to use his October 18, 1994 salary to pay the remainder of the security deposit owed on the new residence. *Id.* at 33–34. However, after the levy of October 18, 1994, his

bank account retained only $ 106, which was insufficient to accomplish this goal. *Id.* at 34, 39. Unable to satisfy the balance of the security deposit, Plaintiff and his family could not move to Bethlehem as planned. *Id.* at 39–40. Inasmuch as the Brights had already terminated their lease in Whitehall, Pennsylvania, they could not return there. *Id.* at 40. Faced with this dilemma, Plaintiff decided to move his wife and children to his in-laws' home at 182 Brinton Street, Buffalo, New York. *Id.* at 40, 210. While his family moved to Buffalo, Plaintiff lived out of his van to be near his work in Eastern Pennsylvania and New Jersey, until an August 1995 IRS refund allowed him to secure a family residence in Whitehall. *Id.* at 75.

Thus, as a result of the September 27, 1994 levy, Plaintiff incurred additional rental and fuel fees for the rental moving truck on October 18, 1994. *Id.* at 221. The September 27, 1994 levy also caused Plaintiff to live apart from his family from October 18, 1994 until August 1995. This separation caused the following additional expenses: (1) cost to sleep and shower in a hotel once a week; *id.* at 100; (2) separate meals for himself, *id.*; (3) he used his company vehicle to drive to and from Buffalo every weekend, (13 cents a mile), and, (4) expense to drive his personal vehicle to the law library once a week (twenty miles round trip), *id.* at 259–60; and (5) a higher mortgage interest rate in 1998, because the IRS levies still appeared on both credit reports and a $ 7000 welfare lien appeared on his wife's credit report.[10] *Id.* at 259.

## III. CONCLUSIONS OF LAW

The United States can only be sued in instances where Congress expressly has

---

**10.** Plaintiff's wife sought and received welfare payments when she and the children were living apart from Plaintiff in Buffalo, New York from October 18, 1994 to August 1995. (N.T. 8/27/02 at 223). After she and Plaintiff were reunited, she agreed to repay those amounts to the State of New York. *Id.* at 271. However, when Plaintiff and his wife applied for a mortgage in 1998, the liens were outstanding.

waived the federal government's sovereign immunity. *Kabakjian v. United States,* 267 F.3d 208, 211 (3d Cir.2001); *Gandy Nursery, Inc. v. United States,* 318 F.3d 631, 636 (5th Cir.2003). Plaintiff's lawsuit involves the explicit waiver of sovereign immunity contained in 26 U.S.C. § 7433, which allows taxpayers to sue the United States for unauthorized collection actions. Specifically, a taxpayer can sue the United States for the "(1) actual, direct economic damages sustained ... as a proximate result of the reckless or intentional actions of an [IRS] officer or employee, and (2) the costs of the action." 26 U.S.C. § 7433(b). Damages are limited to $ 1,000,000.[11] § 7433(b). Taxpayers can only recover when an IRS officer or employee "recklessly or intentionally disregards any provision of [Title 26 of the U.S.Code], or any regulation promulgated under [Title 26 of the U.S.Code] ...." § 7433(a).[12] Taxpayers bringing such suits are required to exhaust administrative remedies, § 7433(d)(1),[13] and to bring suit "within two years after the date the right of action accrues." § 7433(d)(3).

■ A cause of action accrues "when the taxpayer has had a reasonable opportunity to discover all essential elements of a possible cause of action." 26 C.F.R. § 301.7433–1(g)(2).[14] When a taxpayer actually learns of a statutory or regulatory defect in an IRS collection activity, he has had a reasonable opportunity to discover the essential elements of his cause of action. *See Dziura v. United States,* 168 F.3d 581, 583 (1st Cir.1999); *Hynard v. United States,* 233 F.Supp.2d 502, 510 (S.D.N.Y.2002); *United States v. Marsh,* 89 F.Supp.2d 1171, 1175–76 (D.Hawai'i 2000). In this case, Plaintiff complains that the IRS did not properly serve him with the November 22, 1993 notice of intent to levy or the September 27, 1994 levy. He also complains that the IRS did not properly serve the January 24, 1995 levy on him.

■ Notice of intent to levy must be served on a taxpayer in person, left at his dwelling or usual place of business, or sent by certified or registered mail to the taxpayer's last known address, at least thirty days before the scheduled levy. 26 U.S.C. § 6331(d)(2). A taxpayer's "last known address" is not defined in § 6331(d)(2) or any other provision of the Tax Code. *Cf. e.g.,* 26 U.S.C. § 6212(b)(1). A recent regulation under § 6212 defines the phrase, but it was promulgated on January 12, 2001, well after the notice of intent to levy was sent in this case. *See* 26 C.F.R. § 301.6212–2. Nonetheless, legal precedent, under § 6212, defines the phrase.[15]

---

**11.** Section 7433(b) was amended on July 30, 1996 to increase the maximum recoverable damages from $ 100,000 to $ 1,000,000. *Gandy,* 318 F.3d at 638. This amendment, effective immediately, applies to this case, which was filed on January 3, 1997.

**12.** Section 7433(a) was amended on July 22, 1998 to provide liability for an IRS officer or employee's negligent disregard of Title 26 of the U.S.Code or any regulations promulgated under it. *See Kabakjian v. United States,* 92 F.Supp.2d 435, 437 n. 2 (E.D.Pa.2000), *aff'd* 267 F.3d 208 (3d Cir.2001). However, this amendment is not retroactive, *see id.,* and, therefore, does not apply to the conduct at issue in this case.

**13.** Defendant concedes that Plaintiff exhausted the administrative remedies available to him.

**14.** Unless the court indicates otherwise, all citations to the Code of Federal Regulations ("C.F.R.") are to the C.F.R. in effect in 1993, 1994 and 1995.

**15.** Section 6212 concerns a notice of deficiency, which the court has concluded is not actionable under § 7433. *See supra* n. 4. However, the court has found no relevant precedent construing the phrase "last known address" under § 6331 and so will use the precedent under § 6212.

A taxpayer's last known address is the location where the IRS reasonably believes the taxpayer wishes to be reached. *Delman v. Comm'r of Internal Revenue*, 384 F.2d 929, 932 (3d Cir.1967). This definition is designed to effectuate the statute's purpose, which is to provide the taxpayer notice. *Id.* The IRS appropriately may rely upon the address used on the taxpayer's latest filed tax return, unless the taxpayer has sent the IRS a notice of change of address. *Follum v. Comm'r of Internal Revenue*, 128 F.3d 118, 119 (2d Cir.1997) (citing *Tadros v. Comm'r of Internal Revenue*, 763 F.2d 89, 92 (2d Cir.1985)).

The IRS did not serve Plaintiff the November 22, 1993 notice of intent to levy in person, at his home, or at his usual place of business. Defendant maintains that the notice was properly sent to Plaintiff's last known address. However, inasmuch as the November 22, 1993 notice of intent to levy was mailed to Plaintiff's former address at 737 E. Madison, El Cajon, California, even after on February 2, 1993 Plaintiff reported to the IRS that his address was 390 Ferry Street in Buffalo, New York, the court concludes that the November 22, 1993 notice of intent to levy was not served in compliance with § 6331(d)(2).

■ Plaintiff admits that he learned of the September 27, 1994 levy, which followed the November 22, 1993 notice of intent to levy, when the IRS first attached his salary on October 18, 1994. The law requires the IRS to serve notice of intent to levy on a taxpayer at least thirty days before levy. 26 U.S.C. § 6331(d)(2). There is no evidence that Plaintiff actually received the November 22, 1993 notice of intent to levy, however, once Plaintiff learned, on October 18, 1994, that his sala-

ry was being levied, he knew or should have known that the IRS had not provided him the required notice of intent to levy. On October 18th, Plaintiff had facts sufficient to learn the essential elements of his cause of action, that the IRS had failed failure to provide him the notice of intent to levy.[16] Therefore, his cause of action accrued on October 18, 1994, affording him two years, or until October 18, 1996 to commence suit. *See* 26 C.F.R. § 301.7433–1(g)(2); *Dziura*, 168 F.3d at 583; *Hynard*, 233 F.Supp.2d at 510; *Marsh*, 89 F.Supp.2d at 1175–76. Plaintiff did not institute suit until January 3, 1997, concerning the misdirected November 22, 1993 notice of intent to levy, hence this claim is time-barred by the two year statute of limitations contained in § 7433(d)(3).

■ Plaintiff further complains that he suffered damages as a result of the September 27, 1994 and January 24, 1995 levies. The court has found that Plaintiff in fact learned of the September 27, 1994 levy on October 18, 1994. Thus, if the IRS was required to provide Plaintiff notice of this levy and failed to do so, his cause of action with respect to this levy also accrued on October 18, 1994 and would be time-barred. *See* 26 C.F.R. § 301.7433–1(g)(2); *Dziura*, 168 F.3d at 583; *Hynard*, 233 F.Supp.2d at 510; *Marsh*, 89 F.Supp.2d at 1175–76.

According to IRS regulations, notice of the levy on a taxpayer's wages must be given to the person in possession of the salary. 26 C.F.R. § 301.6331–1(a), (c). In this case, that would be Plaintiff's employer, not Plaintiff. Plaintiff can only recover under § 7433(a) for violations of the tax code or regulations promulgated under the

---

**16.** For purposes of applying § 7433's statute of limitations, taxpayers are presumed to know the law, specifically, to know the legal consequences of facts they discover. *See Dzi-* *ura,* 168 F.3d at 583; *Shipley v. Internal Revenue Service,* Civ. A. No. 042573JWL, 2005 WL 1334617, *3 (D. Kan. June 6, 2005).

tax code, *see Gonsalves v. Internal Revenue Service*, 975 F.2d 13, 16 (1st Cir.1992); *United States v. Marsh*, 89 F.Supp.2d at 1176 n. 7; none exists in this instance. Therefore, Plaintiff cannot maintain a lawsuit under § 7433(a) based on the IRS's failure to provide him with notice of either the September 27, 1994 or the January 24, 1995 levies.[17]

Plaintiff's claims are all time-barred or lack merit. Accordingly, the attached Judgment is entered for the Defendant, United States of America, and against Plaintiff, Leonard Bright.

It is so ORDERED.

**17.** Assuming *ad arguendo* that the IRS was required to provide Plaintiff with notice of the January 24, 1995 levy, Plaintiff's claim would be timely, because he commenced suit within two years of the levy. Further, assuming that Plaintiff could show an intentional or reckless failure on the part of the IRS to provide him the required notice, Plaintiff nonetheless has failed to prove by a preponderance of the evidence that he suffered any direct, economic damages from the failure to provide the January 24, 1995 notice. At trial, Plaintiff stated that he sought to recover the damages he had identified in his final pre-trial memorandum. (N.T. 8/27/02 at 98). However, the bulk of the § 7433 direct economic damages contained therein resulted from the September 27, 1994 levy and two subsequent levies to his banks on March 28, 1996, Pl.'s Ex. 18, and November 29, 1996, Pl's Ex. 21. The only item of damages which possibly related to the January 24, 1995 levy is the cost of the higher mortgage rate Plaintiff obtained in 1998. Plaintiff indicated that, even though the "levies" were released by March 1995, they still appeared on his 1998 credit report and contributed to the higher rate. (N.T. 8/27/02 at 259). However, plaintiff also attributed the higher mortgage rate to the $ 7000 welfare lien that appeared on his wife's credit report, *id.* at 259, 271, and Plaintiff's wife went on welfare as a result of the time-barred September 27, 1994 levy, not the January 24, 1995 levy. *Id.* at 223. For these reasons, Plaintiff has failed to substantiate his assertion that a higher mortgage interest rate was attributable to the January 24, 1995 levy.